# CHARLESTON.

## COMSTOCK *v*. DRONEY. LUMBER CO.

### Submitted March 8, 1910. Decided April 4, 1911.

1. LICENSES—*License Taxes—Failure to Pay—Effect.*

    The provision in section 136 of chapter 32 of the Code, relating to proceedings against corporations, delinquent as to license taxes, saying "Any person or persons who shall exercise or attempt to exercise any powers under the charter of such corporation, after the issuing of the governor's proclamation, shall be guilty of a misdemeanor," &c., does not prevent a delinquent corporation from prosecuting or defending suits, after the issuance of such proclamation, respecting contracts made or rights acquired prior to the issuance thereof. (p. 102).

2. PLEADING—*Sufficiency.*

    In a declaration in *assumpsit* by one member of a copartnership on a contract made with the firm, an allegation that the plaintiff has acquired the entire interest of the firm in such contract is one of fact and not of law, and, therefore, sufficient in form and effect. (p. 103).

3.  Logs and Logging—*Contracts—Pleading.*
    An averment in general terms of performance of all condi-
    tions precedent is sufficient in a declaration on a contract for
    damages in the form of profits or gains prevented, by refusal
    of the defendant to permit the plaintiff to fully perform his
    contract. (p. 104).

4.  Master and Servant—*Contract of Employment—Termination.*
    Performance of an executory working contract may always
    be discontinued or terminated by the employer, subject to lia-
    bility on his part for compensation for work already done and
    damages in the form of profits or gains prevented as to the
    unexecuted portion thereof. (p. 106).

5.  Abatement and Revival—*Actions for Damages—Injunction.*
    After the employer in a contract, for the cutting of timber
    on his land, has given notice of his désire to discontinue or
    terminate further performance or execution thereof on the part
    of the employe and enforced such right by an injunction, the
    employe has a right of action on his contract for breach thereof,
    provided he is not in fault himself, and the injunction consti-
    tutes no bar thereto.   (p. 106).

6.  Same—*Other Action Pending.*
    In such case, the pendency of the injunction suit cannot be
    pleaded either in bar or abatement of the action. (p. 106).

7.  Same.
    To be available as matter of abatement, a former suit pend-
    ing must be as broad in its scope and effect as the subsequent
    one in which it is tendered by way of abatement. (p. 107).

8.  Witnesses—*Reception of Evidence—Repeating Testimony—Dis-
    cretion.*
    A trial court has discretionary power to prevent repetitions
    of questions previously propounded and answered. (p. 107).

9.  Evidence—*Quantity—Experts.*
    The opinion of an experienced timber man who has partially
    gone over a tract of land for the purpose of estimating the
    quantity of standing timber thereon, as to the quantity thereof,
    is admissible in an action for damages on a contract for the
    cutting of the timber, but is not entitled to as much weight as
    if he had made a careful estimate of it. (p. 107).

10. Same—*Quantity—Opinion of Experts—Weight.*
    In an action for damages to be measured by the profits ob-
    tainable from the cutting of standing timber at certain prices
    per thousand feet, the opinions of witnesses, not shown to have

made full and careful examinations and estimates, as to the quantity thereof, are not entitled to as much weight as testimony of other witnesses, founded upon actual measurement of the timber after it had been cut, and showing much less timber, and a verdict based thereon must be set aside as being against the decided preponderance of evidence. (p. 107).

(BRANNON, JUDGE, Absent.)

Error to Circuit Court, Pocahontas County.

. Action by M. L. Comstock against the J. R. Droney Lumber Company. Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*Dillon & Nuckolls* and *Henry Gilmer,* for plaintiff in error.

·*Price, Osenton & McPeak,* for defendant in error.

POFFENBARGER, JUDGE:

Assigning numerous errors, the J. R. Droney Lumber Company complains of a judgment against it, in the circuit court of Pocahontas county, for the sum of $12,000.00, in favor of M. L. Comstock, rendered in an action of *assumpsit* on a working contract.

The plaintiff in error is a corporation, organized under the laws of this state, and, having failed to pay its license tax for the year 1909, it has been included in a proclamation by the Governor, declaring the delinquency of corporations for that cause, and also in an order of publication, made in a suit instituted by the Attorney General, to forfeit the charters of ·all the corporations included in said proclamation. Copies of these two papers have been filed here, since the allowance of the writ of error, in support of a motion to dismiss it. The theory of this motion is that the prosecution of the·writ of error is an exercise of the company's charter powers, which the statute, sec. 136 of chapter 32 of the Code, inhibits, after the publication of such proclamation. This statute must receive a reasonable construction. In our opinion, the phrase "exercise or attempt to exercise any power" under the charter, must be read as if it said carry on the business of the corporation, and "doing business", as found in such statutes, has been construed as not extending to the mere act of suing or defending suits in respect to contracts made or rights acquired, while the corporation had power to do business.

*Lumber Co.* v. *Coal Co.,* 66 W. Va. 696; *Typewriter Co.* v. *Piggott,* 60 W. Va. 532; Story's Const., section 1385; 19 Cyc. 1280. The power to sue and make defense is incident to property and contract rights and the exercise thereof the vindication of such rights, and though attendant upon or included in the corporate franchise, the exercise of such power does not amount to a prosecution of corporate business in the ordinary sense of the term. Its continuance, after the right to do business or exercise the ordinary corporate powers has ceased, is necessary to the preservation of rights lawfully acquired and which the legislature cannot be deemed to have intended to destroy or leave unprotected by denying or withholding it. The legislative purpose is fully accomplished, without detriment to vested rights, by forbidding subsequent acquisitions of contract and property rights, including inhibition of remedy for enforcement thereof.

The sufficiency of the declaration is challenged on several grounds, a demurrer to it and each count thereof having been interposed and overruled. It contains one count only, based upon a written contract between the J. R. Droney Lumber Company, of the one part, and M. L. Comstock & Company, of the other part, by which the parties of the second part agreed to cut and deliver at certain places all of the merchantable timber on a certain tract of land belonging to the party of the first part, which service the latter agreed to pay for at certain prices, ranging from $2.50 to $6.00 per thousand feet. This contract further provided that if the parties of the second part should comply with the terms thereof, respecting that tract of land, designated in the record as Tract No. 1, they should have an option to cut the timber on another tract, designated in the record as Tract No. 2. Before cutting the timber on Tract No. 2, the parties of the second part were to peel and deliver on board the cars the bark from all chestnut oak trees thereon, for which service the party of the first part agreed to pay them $4.50 per cord. This done, they were to cut the timber into logs and deliver them at certain points called landings or skids, for which service they were to be paid certain prices, ranging from $5.00 to $5.50 per thousand feet. M. L. Comstock alone sues for breach of this contract, made by a copartnership, consisting of himself and another party, one Odell. In the declaration, he alleges that he had "acquired the entire interest of the said M. L. Comstock &

Company with the knowledge and consent of the said defendant". As the declaration, filed by an individual plaintiff, asserts liability in his favor upon a contract made with a firm, and not otherwise, an allegation of assignment of the contract, or the equivalent thereof, is necessary. *Malsby* v. *Lanark Co., 55* W. Va. 484. Protesting the lack of such an allegation, the defendant insists that the demurrer should have been sustained. The form of an allegation is immaterial, if, fairly and reasonably construed, its effect is certain in a legal sense. *Ceranto* v. *Trimboli,* 63 W. Va. 340. This declaration says M. L. Comstock acquired the entire interest of the firm, in whose name the contract was made. His sole ownership thereof is all that is required to enable him to maintain an action on it. 1 Chitty Pl. 11-12; Dicey Parties 172-174. It is usually acquired by assignment, but, if it be acquired in some other way, as by descent or purchase at a judicial sale, the right to sue upon it would be complete. It may be said the averment of mere acquisition of the firm interests states a conclusion and not a fact, but we do not think so. If the pleader had said the company had assigned to him its entire interest in the contract, this averment would have included matter of law as well as matter of fact, since it might have turned out that the facts relied upon as constituting an assignment were insufficient in law. So here, in saying he acquired his partner's interest, he asserts matter of fact, though matter of law is incidentally included and involved. Hence, in our opinion, this allegation is sufficient.

The next contention is that the declaration, covering both tracts of land and charging a breach of the entire contract, does not sufficiently aver performance of all that was required of the plaintiff, respecting the work to be done on Tract No. 1, completion of that work having been made a condition precedent to any right on his part to work on Tract No. 2. The declaration sets forth the contract, showing what it was incumbent upon the plaintiff to perform. This is followed by an averment that he had performed and fulfilled all things on his part and behalf in the said agreement to be performed and fulfilled; and that he did enter upon and commence the said work, and, for that purpose, did procure and find all materials and labor necessary for performing the same and did the same in part, to-wit:————— feet thereof, to the satisfaction of the defendant, and has always

been ready and willing to perform and complete the whole of the said work; but that the defendant did not, nor would, perform said agreement, nor his promise and undertaking, and prevented plaintiff from proceeding further with his said contract by securing an injunction against the further performance of the same. We see no just ground of criticism of these averments. In this respect, the declaration follows substantially the form prescribed in 2 Chitty Pl. (11 Am. Ed.) pp. 328-329, departing therefrom in two respects only. Instead of saying how many feet the plaintiff cut by way of part performance, it leaves a blank as to the quantity, and, instead of saying the defendant would not advance or pay money for the work done, it says it secured an injunction and thereby prevented further performance of the contract. It suffices to say, as to the first departure, that the declaration nevertheless shows part performance. It says some of the work was done. As to the second, we have no hesitancy in saying the general averment is prevention of full performance, though effected by an injunction. Anything constituting a breach of the contract on the part of the defendant, excused further performance on the part of the plaintiff and gave him a right of action. The extent to which the contract had been performed, when this accrued, is important only in its bearing upon the quantum of damages, the right of recovery for gains prevented decreasing with the extent of performance and that for work done increasing correspondingly, if not paid for. *Grubb* v. *Burford*. 98 Va. 553, does not sustain the contention of the plaintiff in error, for the declaration in that case contained no general averment of performance. It stopped with the averment of performance of certain things which did not include all that was required.

The next question raised upon the demurrer embraces also a charge of error in the rejection of a special plea. As the declaration shows, on its face, the awarding of an injunction to prevent the further cutting of timber, under the contract, it is insisted that this admission of the pendency of an injunction suit makes the declaration bad, on the theory, either that the plaintiff has no remedy, since the prevention of further performance was by legal process, or, that his remedy is by an action upon the injunction bond, and not otherwise. It seems to be well settled that at common law there was no right of action for damages

occasioned by an injunction, unless it was sued out without probable cause or maliciously prosecuted. This defect in the law was supplied by statute, requiring a bond and giving a right of action thereon for the damages. *Railway Co.* v. *Railway Co.,* 47 W. Va. 725. Therefore, if this action included only the damages occasioned by the injunction and extended no further, it could not be maintained, there being no averment of want of probable cause or malicious prosecution. We are of the opinion, however, that the declaration goes beyond the subject matter of the injunction. It demands damages for the breach of the contract. The defendant, by its injunction, seeks only to preserve its timber. The contract involved is a working contract. The plaintiff had no interest in the timber and the title thereto. The defendant had the power to stop performance of that contract, or at least. to give the plaintiff cause to treat it as broken, but, by doing so, it could not discharge itself from the obligation thereof. *Rowan* v. *Hull,* 55 W. Va. 335. An employer may always discontinue the work contracted for, but, in doing so, he may break his contract. *Lord* v. *Thomas,* 64 N. Y. 107; *Davis* v. *Bronson,* 2 N. Dak. 300, 33 Am. St. Rep. 783; *Hyland* v. *Giddings,* 11 Gray 232; *Wigent* v. *Marrs,* 130 Mich. 609; *Black* v. *Woodrow,* 39 Md. 194; *Clark* v. *Franklin,* 7 Leigh 1-8. Performance of an executory contract of sale of personal property may be terminated, subject to liability for damages. *Acme Food Co.* v. *Older,* 64 W. Va. 255; *Danforth* v. *Walker,* 37 Vt. 239. Defendant's wrongful prevention of further execution of the contract gave the plaintiff a right of action for the breach of the agreement. It was not the purpose of the injunction to rescind, cancel or destroy the contract, or try the right to damages or fix the amount thereof, but only· to prevent further execution of the contract. In the chancery cause, there was no decree of cancellation, rescission or anullment or adjudication as to damages. The declaration admits none nor does the special plea aver it. The plain purpose and extent of the injunction was enforcement of the defendant's election to stop further performance by the plaintiff and nothing more. It does not reach the subject matter of this action, and constitutes no bar by estoppel or otherwise. We are of the opinion, therefore, that this ground of demurrer and the action of the court in rejecting the special plea are governed by principles applicable to pleas of former suit pending,

and that these principles neither sustain the demurrer nor the special plea. "To sustain the plea of a former suit pending it must appear that the subject matter and the relief sought in the second suit are the same as in the first suit." *Stafford* v. *Board of Canvassers,* 56 W. Va. 670, 674; *Foley* v. *Ruley,* 43 W. Va. 513; 1 Beach Mod. Eq. Pr., sec. 333. This declaration goes far beyond the scope and effect of the chancery suit.

The action of the court in sustaining an objection to a question propounded to the plaintiff on cross-examination is the subject matter of another assignment of error. This question related to the completion of the work under the first contract and was a repetition of one which had been previously propounded and answered, both on the examination of the witness in chief and his cross-examination. The court clearly had discretion to prevent such repetition. The defendant already had the benefit of more than one answer to that question.

The opinion of a witness as to the quantity of timber uncut and standing in the woods was objected to, and, to the action of the court in overruling the objection, the defendant excepted. This witness testified that he had had about 35 years' experience as a woodsman and 10 years of such experience in the State of West Virginia. He also said he had something like 30 years' experience as a contractor in respect to the cutting and manufacture of timber, and had gone over Tract No. 2 for the purpose of estimating the timber on it as well as to see what kind of work the plaintiff had done. In his examination, he seems not to have gone entirely over the tract of land, but he says the boundaries were pointed out to him and he went up the main hollow on both sides, but did not know how far the timber extended back. Having stated this knowledge and experience he was permitted to say he thought, by the looks of the timber, there was at least eight or ten million feet. We think this evidence was admissible. Having been upon the ground and seen the timber, the witness was competent to give his opinion as to the quantity, but his failure to go carefully over all the ground and ascertain the boundaries was a matter for consideration of the jury in passing upon the soundness, accuracy and probative value of his opinion. His evidence may not have been very valuable, but it was relevant and material, and, therefore, admissible. It proved the existence of a large amount of timber;

the cutting of which, under the contract, would have been profitable to the plaintiff.

We have carefully examined all the instructions, concerning which the benefit of exceptions were saved and find no fault with the rulings of the court thereon. No. 1 and No..3, given for the plaintiff, read together, tell the jury to find for the plaintiff and properly state the measure of damages, if they believe the plaintiff was ready and willing to perform the contract, or had partly performed it, in a manner satisfactory to the defendant, but not in strict conformity with its terms, and had been prevented by the defendant from completing it. Substantially all the argument against them has been disposed of by the principles declared, respecting the special plea. Plaintiff's instruction No. 2, relating to the credit to be accorded the testimony of witnesses is in accord with well settled principles and rules often declared by this Court. Defendant's instruction No. 2, relying upon the effect of the injunction as a bar to the action, was properly refused for reasons already stated. Its instruction No. 4, peremptorily directing a verdict for the defendant was properly refused, since the evidence, as will be hereinafter shown, was sufficient to sustain a verdict. Its instruction No. 6, relying upon the partnership relation as a bar, was properly refused for reasons stated, in passing upon the demurrer.

Substantially all the evidence, adduced by the plaintiff, to fix the amount of damages, on the basis of eight or ten million feet, consists of his own testimony and that of the witness Lord, and amounts to nothing more than their opinions as to the quantity of standing timber. Neither of these witnesses shows how his estimate was made. They do not state the area of land nor the estimated quantity of timber per acre. Lord admits that he did not know the area or the boundaries. Obviously they have given mere rough guesses as to the quantity of uncut timber. On the other hand, two witnesses for the defendant who superintended the work of taking this timber off of the land, for a purchaser thereof, after the plaintiff's work was stopped, place the amount taken off, as ascertained by actual measurement, at less than two million feet. A. J. Cook says the exact quantity taken off was 1,576,096 feet. W. O. Tomb says it was approximately 1,551,096. Both say that, after this had been taken off, there remained on Tract No. 2 less than 300,000 feet. The

credibility of these witnesses has not been assailed in any way, and their statements as to the quantity of timber cut by them stand upon actual knowledge and the test of measurement. What they say as to the quantity remaining uncut, after this was taken off, is not controverted. In this state of the evidence as to quantity, affecting the amount of damages recoverable, we find a decided preponderance against the assessment made by the jury, resting upon the relative completeness and accuracy of the knowledge of the witnesses for the defendant and the slightness of the knowledge of the facts on the part of the witnesses for the plaintiff. Such a preponderance or superiority of evidence must.prevail.

We deem it necessary to say, for the purposes of a new trial, that the plaintiff's case was open to objection on the ground of variance, since he did not, prove full performance of precedent conditions, in accordance with the allegations of his declaration, but did adduce evidence, without objection, of modifications of the contract and excuses for failure to comply strictly with all its terms and conditions. On the trial, the variance was waived by the failure of the defendant to take advantage of it by proper objections. *Long* v. *Campbell,* 37 W. Va. 665; *Smith* v. *Lawson,* 18 W. Va. 212; *Damarin* v. *Young,* 27 W. Va. 438; *Davis* v. *Miller,* 14 Grat. 19. It is not a total variance, or one incurable by amendment, and, if the objection had been made, no doubt the declaration would have been amended, and this should be done before a new trial is had.

For the reason stated, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and Remanded.*