ERNEST T. GRUNDEN, GUARDIAN, APPELLEE, V. FRED N. SKILES ET AL., APPELLANTS.

FILED JANUARY 30, 1914. No. 17,573.

1. Judgment: VACATION OF SATISFACTION: FRAUD. A settlement of a judgment will be set aside and the judgment reinstated when the settlement was obtained by fraud practiced upon a person of weak understanding, who is unable to guard herself against imposition or resist importunity.

2. ———: ———: APPLICATION OF PAYMENTS. When a judgment is reinstated under the foregoing circumstances, the plaintiff is not required to restore the payments made to secure such a settlement, but the payments will be credited on the judgment thus reinstated.

APPEAL form the district court for Harlan county: HARRY S. DUNGAN, JUDGE. Affirmed as modified.

J. G. Thompson and Thomas & Shelburn, for appellants.

F. L. Carrico and Hague & Anderbery, contra.

BARNES, J.

Appeal from a decree setting aside a settlement of a judgment obtained in the district court for Harlan county, and the dismissal of the appeal in that cause in the supreme court.

It appears that Martha I. Hamer, by her duly appointed guardian, obtained a judgment of the district court for Harlan county some time in the year 1909 in an action against Fred N. Skiles and the Meyer Brothers for the

Grunden v. Skiles.

sum of $4,947.97, and at about the same time the same court rendered a decree in her favor and against the defendant Skiles, requiring him to convey to her a certain house and lot in the city of Alma, in that county, for fraud practiced upon her; she being of a weak mind and incapable of transacting her business. The case against Skiles and the Meyer Brothers had been taken to the supreme court of Nebraska on appeal, and was pending in that court on May 13, 1910; and her guardian had procured his discharge, and on or about that date, while the plaintiff was visiting at the Skiles home in Holdrege, by the solicitation of Skiles and the attorney for Meyer Brothers, she made a settlement of the judgment against Skiles and the Meyer Brothers, for which they induced her to accept $663.37, in money, and the payment to her attorney, who procured the judgment, the sum of $500, and Skiles executed to her a deed to the house and lot in Alma; he not having appealed from the decree in his case. She thereupon was persuaded to execute a paper writing acknowledging satisfaction of the judgment of $4,947.97, with interest and costs, and dismissing the defendant's appeal then pending in the supreme court. As soon as Mrs. Hamer's friends ascertained what had occurred, a guardian of her person and estate was appointed by the county court of Gosper county, where she was living at that time, and this action to set aside the settlement was commenced. The issues were made up, a trial was had to the court, which resulted in a finding for plaintiff and a decree setting aside the settlement upon certain conditions, and the defendants have appealed.

It appears that when this case was tried Martha I. Hamer was a woman 46 years of age; that she was born in Michigan, from which state, with her parents, she came to Iowa at the age of 13. When she was 15 years old she was married to one W. J. Hamer. They lived in Iowa for 16 years, and then moved to Elwood, Nebraska, where they lived until about 13 years ago, when she was divorced from her husband on the ground of extreme cruelty. The husband first attempted to get the divorce, but failed. He

then made a property settlement with her out of court, by which she was given 200 acres of land in the state of Iowa, worth about $15,000, out of the estate of her husband, which was then worth from $75,000 to $100,000, and upon her application the divorce was granted. She then went to Iowa to live on the farm she had thus obtained; not being successful in managing the farm she returned to Holdrege, in Phelps county, Nebraska, where she made the acquaintance of the defendant Fred N. Skiles. Skiles kept company with Mrs. Hamer, and promised to marry her. By this means he obtained such an influence over her that she readily did anything that he suggested in regard to her business affairs. It appears that at his solicitation she went to Iowa and mortgaged her farm for $9,000, $8,000 of which she turned over to Skiles without a particle of security, and with this money he bought a saloon and the stock and fixtures therein in Alma, Harlan county, Nebraska. When Mrs. Hamer's children ascertained what she had done in regard to placing a mortgage on her farm and turning the money over to Skiles, one of her sons was appointed guardian of her person and property, and by an action in the district court for Harlan county recovered the judgment for which she made the settlement in question in this case. He also obtained a decree requiring Skiles to deed to her a house and lot in Alma, which he had purchased with a part of the money he had obtained from her.

There is considerable evidence in the record detailing the various business transactions of Mrs. Hamer, and her conduct in regard to her other affairs, from which it clearly appears that, while she was not violently insane, she was a person of weak mind, and entirely incompetent to transact business. As a proof of that fact, some $16,000, which she obtained from the sale of her Iowa farm, in a short space of time was dissipated and lost through the influence of Skiles, and by reason of her various business transactions. It appears that Skiles and the Meyer Brothers were aware of the condition and state of mind of Mrs. Hamer, and as soon as her former guardian was discharged

they set about procuring the settlement of the judgment in question. It is true that the Meyer Brothers apparently took no part in the settlement, but it is clear that they availed themselves of their codefendant Skiles and his influence over Mrs. Hamer in order to procure the settlement. It also appears that their attorney, while he practiced no fraud upon Mrs. Hamer, was very active and insistent in procuring the settlement; and, in the state of Mrs. Hamer's mind, considering the power that defendant Skiles seemed to have over her, it is clear that the settlement was obtained by fraud. She did not know the amount of her judgment; she did not seem to understand that she was not getting anything from Skiles when he made the deed, which the court had decreed to her, of the house and lot in Alma; she did not appear to understand how much or how her former attorney Everson was paid, and she knew nothing of the $500 that Skiles, one of the codefendants in the judgment for which the settlement was made, had received in order to procure such settlement. In fact she really understood nothing about the nature of the settlement; and, when she executed the paper writing by which she dismissed the defendant's appeal from that judgment in the supreme court, she had no comprehension of its force and effect. The decree in this case seems to be amply sustained by the evidence, and the settlement was properly set aside.

In *Sprinkle v. Wellborn*, 3 L. R. A. n. s. 174 (140 N. Car. 163), it was said: "Equity will cancel a deed procured from a person of weak understanding, who is unable to guard himself against imposition or resist importunity."

In *Dewey v. Allgire*, 37 Neb. 6, this court said: "While mere imbecility or weakness of mind in a grantor will not, in the absence of fraud, avoid his deed, insanity will do so if of such a character as to induce the conveyance, although such insanity may not amount to a complete dethronement of reason and understanding upon all subjects." To the same effect are *Wager v. Wagoner*, 53

Neb. 511; *Hay v. Miller,* 48 Neb. 156; *Aldrich v. Steen,* 71 Neb. 33; *Gingrich v. Rogers,* 69 Neb. 527.

When it is considered that Mrs. Hamer satisfied and released her judgment of $4,947.97, with interest and costs, for the paltry sum of $663.37, which she actually received therefor, it is apparent that her condition of mind and the fraud practiced upon her in procuring the settlement is sufficient to sustain the decree of the district court setting such settlement aside.

It is contended, upon the cross-appeal in this case, that the district court erred in requiring Mrs. Hamer to repay to the defendants William Meyer and Edward Meyer the sum of $1,167.50 paid by them to her and her attorney, John Everson, and that the court further erred in requiring the plaintiff to pay to the defendants William Meyer and Edward Meyer the costs paid by them in the case of Martha I. Hamer against Fred N. Skiles *et al.,* and the costs paid by the defendants in the case of Arthur W. Hamer, guardian, against Fred N. Skiles, Edward Meyer and William Meyer, in all amounting to the sum of $94.15. We think this contention should be sustained. Those payments cannot be said to have been made in good faith, and it was quite absurd to annul the settlement of a judgment for mental incompetency and fraud, and yet require the plaintiff to restore the money to the defendants which should be credited upon the judgment which they sought to have satisfied and released. *Englebert v. Troxell,* 40 Neb. 196; *Bloomer v. Nolan,* 36 Neb. 51; *Rea v. Bishop,* 41 Neb. 202; *Wager v. Wagoner, supra.* They obtained the settlement knowing the past and present condition of Mrs. Hamer; they paid Skiles, one of their codefendants, $500 to play upon the sentimental feelings of Mrs. Hamer; they paid the costs of procuring the judgment against them; they paid the attorney's lien claimed by Everson upon that judgment; and they paid Mrs. Hamer herself only $663.37 in order to procure the settlement, and there is nothing unjust or inequitable in requiring the trial court to credit the sums so paid upon the judgment which was reinstated by the decree.

As we view the record, the judgment of the district court should be modified in so far as it required the plaintiff to restore the money paid by the defendants to procure the settlement, with the exception of the $500 paid defendant Skiles for his services, and that court should be required to credit such payments upon the judgment. The judgment of the district court is therefore modified to that extent, and as thus modified is affirmed.

AFFIRMED AS MODIFIED.

LETTON, FAWCETT and HAMER, JJ., not sitting.