**BECKER STEEL CO. OF AMERICA v. CUMMINGS, Atty. Gen., et al.**

District Court, S. D. New York.
April 29, 1936.

Townsend & Kindleberger, of New York City (E. Crosby Kindleberger, of New York City, of counsel), for complainant.

Lamar Hardy, U. S. Atty., of New York City (Irvin C. Rutter, Asst. U. S. Atty., of counsel), for defendants.

PATTERSON, District Judge.

The suit is brought under the Trading with the Enemy Act, as amended, 50 U.S. C.A.appendix, § 1 et seq. The motion is by the defendants to dismiss the bill as insufficient on its face.

The controversy is one of long standing. The averments in the bill show this state of affairs: The Alien Property Custodian in 1918 seized property belonging to the plaintiff, a West Virginia corporation controlled wholly by citizens of the United States, and sold the seized property for $20,000. In 1922 the plaintiff brought suit in this court under section 9 (a) of the Trading with the Enemy Act, as amended (50 U.S.C.A.appendix, § 9 (a), to recover the proceeds of sale from the Custodian and the Treasurer of the United States. That suit resulted in a decree of August 21, 1925, in the plaintiff's favor for the full amount of $20,000. In satisfaction of the decree the Custodian paid the plaintiff only $16,112.16, claiming that certain expenditures amounting to $3,-887.84 were chargeable against the proceeds of sale. The payment was made in 1925, and the plaintiff, to get this part of the money called for by the decree, and "pursuant to duress in law" exerted by the Custodian, was forced to sign a release and full satisfaction of the decree. Matters remained in this condition until 1932, when the plaintiff made a motion in the old suit to compel the successor Custodian and the successor Treasurer to pay over the $3,-887.84 withheld. The motion was lost on the point that there was no power to permit substitutions of the successors as defendants in the suit more than six months after the original defendants had ceased to hold office. Becker Steel Co. v. Hicks (C. C.A.) 66 F.(2d) 497. After that setback the plaintiff, on July 24, 1934, brought the present suit against the Attorney General as successor to the Alien Property Custodian and against the present Treasurer to recover the old unpaid balance of $3,-887.84. The bill, in addition to alleging the foregoing, states that in 1929 the plaintiff's charter was revoked in West Virginia for nonpayment of taxes, and that the suit is

being pressed in the corporate name by the surviving officers and directors.

The defendants met the bill with a motion to dismiss for want of jurisdiction. On that motion they prevailed in this court and in the Circuit Court of Appeals, but the decree of dismissal was reversed in the Supreme Court and the case remanded for further proceedings. Becker Steel Company v. Cummings, 296 U.S. 74, 56 S.Ct. 15, 80 L.Ed. 54. The Supreme Court ruled on only one point, that the suit might be maintained as one under section 9 (a) of the Trading with the Enemy Act even though the sum demanded was no longer "held" by the Custodian or Treasurer.

On the return of the case to this court the defendants made the present motion to dismiss the bill for insufficiency on its face. The motion raises four points: (1) That the suit is not one to establish any right in money or property seized by the Custodian and that consequently there is no jurisdiction to hear it; (2) that the claim set forth has been fully satisfied of record; (3) that the plaintiff because of dissolution has no interest in the claim; (4) that laches bars maintenance of the suit.

1. The argument on want of jurisdiction is this: The suit is essentially one against the United States, and consent to be sued on the part of the United States must be found in some statute; the only statute at all applicable is section 9 (a) of the Trading with the Enemy Act, and that section permits only suits on original claims for property seized by the Custodian; [1] the instant suit is not one on an original claim, but is one based on the 1925 decree. This argument was not considered on the earlier motion and is still open.

Several of the steps in the argument are unquestionably firm. The suit is essentially one against the United States and can be maintained only if comprehended by a statute permitting a suit of this character. Banco Mexicano v. Deutsche Bank, 263 U.S. 591, 44 S.Ct. 209, 68 L.Ed. 465; Henkels v. Sutherland, 271 U.S. 298, 46 S.Ct. 524, 70 L.Ed. 953, 51 A. L.R. 229. Indeed, it has already been held in this case that there is no jurisdiction un-

---

[1] "§ 9(a) Any person not an enemy or ally of enemy claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States, or to whom any debt may be owing from an enemy or ally of enemy whose property or any part thereof shall have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States may file with the said custodian a notice of his claim under oath and in such form and containing such particulars as the said custodian shall require; and the President, if application is made therefor by the claimant, may order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States, or of the interest therein to which the President shall determine said claimant is entitled: Provided, That no such order by the President shall bar any person from the prosecution of any suit at law or in equity against the claimant to establish any right, title, or interest which he may have in such money or other property. If the President shall not so order within sixty days after the filing of such application or if the claim-

ant shall have filed the notice as above required and shall have made no application to the President, said claimant may institute a suit in equity in the Supreme Court of the District of Columbia or in the district court of the United States for the district in which such claimant resides, or, if a corporation, where it has its principal place of business (to which suit the Alien Property Custodian or the Treasurer of the United States, as the case may be, shall be made a party defendant), to establish the interest, right, title, or debt so claimed, and if so established the court shall order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States or the interest therein to which the court shall determine said claimant is entitled. If suit shall be so instituted, then such money or property shall be retained in the custody of the Alien Property Custodian, or in the Treasury of the United States, as provided in this Act, and until any final judgment or decree which shall be entered in favor of the claimant shall be fully satisfied by payment or conveyance, transfer, assignment, or delivery by the defendant, or by the Alien Property Custodian, or Treasurer of the United States on order of the court, or until final judgment or decree shall be entered against the claimant or suit otherwise terminated."

604

less authority for hearing the suit can be found in section 9 (a) of the Trading with the Enemy Act. Becker Steel Co. v. Cummings, 296 U.S. 74, at page 78, 56 S.Ct. 15, 17, 80 L.Ed. 54. It is also manifest that the suit is not on the original claim of the plaintiff to recover its property or proceeds. That claim became merged in the 1925 decree, whereby the plaintiff obtained an adjudication that it was entitled to recover $20,000. When a cause of action goes to judgment or decree which remains in full force, the original cause of action is merged and gone forever. Schuler v. Israels, 120 U.S. 506, 7 S.Ct. 648, 30 L.Ed. 707; Hamer v. New York Railways Co., 244 U.S. 266, 37 S.Ct. 511, 61 L.Ed. 1125.

But the present suit, being one to enforce a decree already obtained in a suit properly brought under section 9 (a) of the act, is itself within the provisions of the section. From what the Supreme Court has already said in this case, we know that section 9 (a) is to be "broadly construed to give effect to its remedial purpose." 296 U.S. 74, at page 80, 56 S.Ct. 15, 18, 80 L. Ed. 54. We also know that a bill to carry into operation a prior decree in the plaintiff's favor, though perhaps original in the chancery sense of the word, is in substance and effect an ancillary and supplemental bill, and that jurisdiction over the initial suit furnishes jurisdiction over the ancillary and supplemental suit. Krippendorf v. Hyde, 110 U.S. 276, 4 S.Ct. 27, 28 L.Ed. 145; Pacific Railroad v. Missouri Pacific Railway Co., 111 U.S. 505, 4 S.Ct. 583, 28 L.Ed. 498; Root v. Woolworth, 150 U.S. 401, 14 S.Ct. 136, 37 L.Ed. 1123; New Orleans v. Fisher, 180 U.S. 185, 21 S.Ct. 347, 45 L.Ed. 485; Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195. The conclusion must be that where a claimant has brought suit against the Custodian under section 9 (a) of the Trading with the Enemy Act and has won a decree that stands unsatisfied in whole or in part, the court which rendered the original decree has jurisdiction to entertain a later suit by the claimant to enforce full satisfaction of the decree. The case is within the jurisdiction of this court.

2. It is said that the decree on which the bill is based has been satisfied of record. That is quite true, but the plaintiff pleads that the full amount of its claim as fixed by the decree has never been paid, and that the warrant of satisfaction signed in its behalf was exacted under duress.

Were it not for the fact that the satisfaction piece happened to be under seal (a seal on an executed contract at that time being conclusive evidence of consideration in New York), the payment of a smaller amount than the amount due under the decree could not as matter of contract operate as a satisfaction, quite apart from duress. Williston on Contracts, § 120; Weber v. Couch, 134 Mass. 26, 45 Am.Rep. 274.

The satisfaction piece is a receipt. Like other receipts, it may be explained or avoided by satisfactory proof of invalidating conditions when the rights of third parties have not intervened. Freeman on Judgments, § 1166; Dane v. Holmes, 41 Mich. 661, 3 N.W. 169. One of the recognized grounds of vacating a satisfaction of judgment is duress practiced on the judgment creditor. Stewart v. Armel, 62 Ind. 593; Hayes v. Sheffield Ice Co., 282 Mo. 446, 221 S.W. 705; Grunden v. Skiles, 95 Neb. 124, 145 N.W. 341; Voell v. Kelly, 64 Wis. 504, 25 N.W. 536. It follows that the recorded satisfaction of the 1925 decree is not a bar to recovery under the decree, if the plaintiff can prove what it pleads, that the full amount of the decree was never paid, and that the signing of a satisfaction piece was brought about by duress. See, also, Henkels v. Sutherland, supra, where the defendants seem to have conceded on appeal that a satisfaction somewhat similar was brought about by duress and was not binding. If the facts presented by the bill are true, the right of the Custodian to deduct expenses from the fund is not a present issue; the 1925 decree precludes the defendants from pressing any contention on that point.

3. It is urged that the plaintiff has no legal interest in the claim. The bill does show that the plaintiff's charter was revoked in West Virginia for nonpayment of taxes in 1929. But by West Virginia law the forfeiture of charter does not cut off the right to bring suit in the corporate name in the course of winding up, to collect claims owing to the corporation. West Virginia Code, c. 53, § 59; Greenbrier Lumber Co. v. Ward, 30 W.Va. 43, 3 S.E. 227; Comstock v. J. R. Droney Lumber Co., 69 W.Va. 100, 71 S.E. 255; Stark Electric R. Co. v. McGinty Contracting Co. (C.C.A.6) 238 F. 657. The revocation of the plaintiff's charter does not defeat the bill.

It is said further that in one of the proceedings in the initial suit brought

by the plaintiff there is a certified copy of a decree of a West Virginia court by which a receiver of the plaintiff in dissolution was appointed. Such a paper is not a part of this bill, however, and facts set forth in it are not matter of judicial notice. A court will take judicial notice of its own records, but the notice does not extend to facts of evidentiary character alleged in papers filed by litigants in prior proceedings. National Casket Co. v. Stolts (C.C.A.2) 174 F. 413. It is unnecessary, therefore, to consider whether the alleged receivership should be given extraterritorial effect.

4. The final point made is that of laches. It is possible that the long delay and attendant incidents between the so-called satisfaction of the 1925 decree and the first assertion of further rights under the decree will foreclose relief. But the delay may be capable of fair explanation; it may be that there was no prejudice from the plaintiff's passiveness; no analogous statute of limitations is called up by the defendants. It cannot be said, in other words, that the plaintiff's demand is so stale and unconscionable on its face that the suit should be thrown out before hearing on the merits. The matter of laches might better be taken up on the trial. Winget v. Rockwood (C.C.A.8) 69 F.(2d) 326.

The motion to dismiss will be denied.