PEORA COAL COMPANY *v.* LLOYD F. ASHCRAFT *et al.*

(No. 9171)

Submitted September 9, 1941. Decided October 28, 1941.

*Columbus Wetzel, D. A. Abruzzino, Strother & Mc-Donald* and *F. E. Parrack,* for appellant.

*John C. Southern* and *Geo. W. Bland,* for appellees.

ROSE, JUDGE:

Peora Coal Company, a corporation created under the laws of the State of West Virginia, prosecutes this appeal to a final order dismissing its bill of complaint in a chancery cause in the Circuit Court of Harrison County against Lloyd F. Ashcraft, Freda L. Ashcraft and Mollie E. Hall.

This is a suit to cancel as a cloud on plaintiff's title a quit-claim deed dated May 31, 1939, from the defendant, Mollie E. Hall, to the defendants, Lloyd F. Ashcraft and Freda L. Ashcraft, for lots sixteen, seventeen and eighteen in the West Peora Addition to the village of Peora in Harrison County, which lots were conveyed to the plaintiff by Thomas Love and wife by deed dated August 24, 1921, under which the plaintiff claims to have had adverse possession ever since the date thereof; and to enjoin the Ashcrafts from interfering with the possession of these lots by the plaintiff, its agents and tenants.

To this bill of complaint the Ashcrafts filed two pleas in abatement, demurrers to which were overruled.

The cause was thereupon submitted to the court upon evidence with the result that a decree was entered sustaining both pleas and dismissing the bill. This appeal followed.

The first question before us is the correctness of the trial court's action in overruling the demurrers to the pleas in abatement. These pleas were, for the most part, alike. Each sets up that the plaintiff, Peora Coal Company, was returned delinquent for the nonpayment of its corporation taxes for the year 1931; that after the statutory report of the auditor to the governor and secretary of state, the governor issued the proclamation required by statute formally declaring the corporation delinquent; that thereupon a chancery suit was instituted as required by the statute by the attorney general in the name of the State of West Virginia against the Peora Coal Company and all other corporations, domestic and foreign, which were delinquent for non-payment of taxes for the year 1931, which suit was brought to February Rules, 1932, and regularly matured, the style of which was State of West Virginia v. A. Holt & Company, et al.; that upon the maturity of the said chancery cause, a decree was entered on the 27th day of May, 1932, giving recovery against the Peora Coal Company in favor of the State of West Virginia for $79.20 and its pro rata share of the costs of said suit, and decreeing the charter, rights and franchises of each of the resident defendant corporations

forfeited and annulled; and for the purpose of winding up the business of said corporations, including the Peora Coal Company, one "William T. Lively was appointed Special Receiver for the purpose of converting the property and assets of every character of aforesaid corporation into cash, for the purpose of paying off its debts to the State of West Virginia * * * and to distribute the remainder thereof among the stockholders of said corporation pro rata as their several interests may appear, and the said Special Receiver was directed and ordered to take into his possession and control, at once, all such property and assets, including cash in banks, real estate or interest therein, personal property of all kinds, choses in action, and bring and defend in his own name, as such Special Receiver or in the name of the corporation, any and all suits necessary to obtain possession thereof, and to conserve same, and to collect all accounts, debts and demands due or which may hereafter become due said corporation."

Special plea No. 1 then follows with the allegation that the suit of the State of West Virginia v. A. Holt & Company was, at the time of the institution of the present suit and still is, pending in the Circuit Court of Kanawha County; that William T. Lively was, at the time of the institution of the instant suit, receiver for the Peora Coal Company, while special plea No. 2 alleges that by a decree made in the case of State of West Virginia v. A. Holt & Company entered in May of 1939, the final report of the special receiver, William T. Lively, was filed, ratified and confirmed in every respect, and that the chancery cause, as to the defendant, Peora Coal Company, was retired from the docket.

Each of the special pleas alleges as a conclusion of law that by reason of the facts therein shown, the Peora Coal Company is incapable of instituting, prosecuting or maintaining the present suit.

It is very clear that if the chancery cause of State v. A. Holt & Company, which has for one of its objects the protection of the Peora Coal Company's property, is still pending, a second suit for that purpose cannot be main-

tained by any person. *Blumberg Bros.* v. *King,* 98 W. Va. 275, 127 S. E. 47; *State* v. *Bland,* 89 W. Va. 600, 109 S. E. 716; *Hinkle* v. *North River Ins. Co.,* 70 W. Va. 681, 75 S. E. 54. Also, if the special receiver appointed in that cause is still qualified and acting and has the assets, including the lots in question, actually in his custody, this suit cannot be maintained without the consent and express authorization of the Circuit Court of Kanawha County. *Jones* v. *Browse,* 32 W. Va. 444, 9 S. E. 873; *Blair* v. *Core,* 20 W. Va. 265. The demurrer to this plea in abatement was, therefore, properly overruled.

However, in the case of plea No. 2, the opposite averment is made, namely, that the suit of State v. A. Holt & Company is not pending, but was terminated and retired from the docket by a decree entered in May, 1939, a date prior to the institution of the present suit. The incapacity of the plaintiff to maintain the present suit is based in this plea solely upon the decree of the Circuit Court of Kanawha County forfeiting its charter, rights and franchises. The question is whether that decree so completely annihilated the corporation as to destroy that capacity.

By statute in this state prior to 1931, it was expressly provided as follows:

> "And suits may be brought, continued or defended, the property, real or personal of the corporation be conveyed or transferred under the common seal or otherwise, and all lawful acts be done, in the corporate name, in like manner and with like effect as before such dissolution or expiration; but so far only as shall be necessary or proper for collecting the debts and claims due to the corporation, converting its property and assets into money, prosecuting and protecting its rights, enforcing its liabilities, and paying over and distributing its property and assets, or the proceeds thereof, to those entitled thereto." Barnes' West Virginia Code, 1923, Chapter 53, Section 59.

The right of a corporation under this statute to maintain a suit in its own name for the purposes named therein

has been affirmed in the case of a corporation whose charter, rights and franchises had been decreed forfeited in a suit brought by the state for that purpose. *Greenbrier Lumber Co.* v. *Ward,* 30 W. Va. 43, 3 S. E. 227; *Watson-Loy Coal Company* v. *Coal Mining Company,* 85 W. Va. 645, 102 S. E. 485; *Stark Electric R. Co.* v. *McGinty Contracting Company,* 238 Fed. 657. But by section 83, article 1, chapter 31 of the Code of 1931, the above quoted statute is amended so as to limit its application to cases "when a corporation shall expire or be dissolved as prescribed in this article." The article referred to relates only to corporations dissolved voluntarily or whose charter has expired. Peora Coal Company did not "expire" and was not "dissolved" under the provisions of that article. Its "charter, rights and franchises" were "forfeited" for the non-payment of its charter taxes by decree of court in a suit instituted by the state for that purpose under a wholly disconnected statute. Section 77, article 12, chapter 11, Code of 1931. This amendment by the Code of 1931 limiting the right there given to a corporation to maintain suits for the settlement of its business solely to those corporations which have expired or been dissolved under the provisions of that article clearly make the provision no longer applicable to corporations whose charter, rights and franchises have been forfeited in a suit brought under the provisions of section 77, article 12, chapter 11, Code 1931.

The amendment in the Code, 1931, was made without comment or note by the revisers or the legislative committee. Presumably, therefore, it was not considered that, by this amendment, any great modification of our corporation law would result. The statute, as it stood before 1931, had been in effect since the foundation of this state and originated in Virginia in 1837. Under it our whole system of liquidating defunct corporations had grown up. It is not to be presumed that the legislature by the amendment of 1931, made only so as to affect indirectly corporations whose charters should be forfeited, intended to leave corporations, whose situation is that of the Peora Coal Company, without some clear, con-

venient, and effective method of liquidation. What would be the result if this corporation does not survive the decree forfeiting its charter sufficiently to maintain the present suit? How would its property be protected? What remedy do stockholders and creditors have? Where is the title to its property? What procedure may stockholders or creditors pursue with certainty? Under modern corporation law, it is commonly held in other states that, upon the termination of a corporation's charter, equity will treat the title to its property as having passed to the stockholders in trust for its creditors, stockholders and others. 19 C. J. S., Corporations, section 1730c; 16 Fletcher, Corporations, section 8134. But we find no case in this state where this doctrine has been resorted to. In fact, heretofore there has been no occasion to make use of it, since the statute, Code, 31-1-83, before the amendment of 1931, preserved the power of the corporation to hold its property for liquidating purposes after expiration or forfeiture of its charter or its dissolution. In its present amended form, this statute protects all corporations in process of dissolution, except such as have lost their charters, rights and franchises under Code, 11-12-77, and whose affairs have not been fully settled and liquidated in a forfeiture suit. Are we to assume that the legislature by the amendment of 1931 meant to cast the corporation law of this state back more than one hundred years to the situation that prevailed before the Virginia Act of 1837? If so, what would be the rights and remedies of the stockholders and creditors of the Peora Coal Company in its present situation? Shall we adopt the foreign equitable doctrine that its property has vested in the stockholders? If so limited, complications can be foreseen. Shall we say that interested parties must revive the forfeiture suit and proceed therein? If so, how and by whom shall it be revived? The state has recovered its claim in full and inflicted its penalty of cancellation of the charter. What further interest does it have in the suit? Can a suit be further maintained by the state as a plaintiff? If we accept the theory that the corporation cannot be a party to the suit, since its

charter was forfeited, who will be the defendants in the revived forfeiture suit, and if the suit could be successfully revived, shall we adopt a rule that requires the settlement in every detail of every defunct corporation's business to be made in the Circuit Court of Kanawha County? Every year a suit for the forfeiture of corporation charters must be instituted in that court, involving scores of corporations, probably with small assets. Shall the creditors and stockholders of such corporations, with their attorneys and witnesses, be compelled to come to Charleston to liquidate the corporation, thereby perhaps making their relief meaningless by reason of the expense and inconvenience to which they are subjected? Shall the Circuit Court of Kanawha County be forever burdened with the infinite details of handling all these matters? We shall not so hold if any other reasonable conclusion can be found.

In the case of *Comstock* v. *Droney Lumber Co.*, 69 W. Va. 100, 71 S. E. 255, the question was raised whether a corporation could continue to be a party to a chancery suit after the Governor had proclaimed its delinquency, in view of the statute expressly forbidding it thereafter to transact business. A former eminent judge of this Court on this question had this to say:

> "The power to sue and make defense is incident to property and contract rights and the exercise thereof the vindication of such rights, and though attendant upon or included in the corporate franchise, the exercise of such power does not amount to a prosecution of corporate business in the ordinary sense of the term. Its continuance, after the right to do business or exercise the ordinary corporate powers has ceased, is necessary to the preservation of rights lawfully acquired and which the legislature cannot be deemed to have intended to destroy or leave unprotected by denying or withholding it."

In the instant case, the same constitutional question arises. We feel that we should avoid a construction of our law which would compel us to say that the legis-

lature, by the amendment of 1931, attempted, or incidentally did, a thing of questionable constitutionality. We should endeavor so to construe the law applicable to the Peora Coal Company in its present situation as to avoid the difficulties above enumerated, if such reasonable construction can be found.

The only statutory provisions relating to the forfeiture of corporate charters and the liquidation of assets is found in sections 75 to 78 of article 12 of chapter 11 of the Code of 1931. These sections provide that the auditor shall, between the first and fifteenth day of the second month of the license year in every year publish in some daily newspaper a list of corporations delinquent for the nonpayment of license taxes; that within thirty days after the first day of the fifth month of the license year, the auditor shall certify to the governor and the secretary of state a list of all such delinquent corporations, domestic and foreign; that within thirty days after receiving such list, the governor shall issue his proclamation declaring the delinquency of every such corporation; that within sixty days after such proclamation, a suit in chancery shall be instituted by the attorney general in the circuit court of the county in which the seat of government is located, making all such delinquent corporations defendants; that upon the hearing of such suit, the court shall enter a decree or judgment against each of said corporations for the amount due to the state, including costs of the proceeding, and, "if the same be not then and there paid, the court shall enter a decree if it be a domestic corporation, forfeiting its charter, rights and franchises * * *." Section 77 provides further that "in any such suit or proceeding the court may make such orders and decrees as it shall deem necessary and proper for a court of equity; and may appoint a receiver for any such corporation and order its assets marshalled and distributed among its creditors; * * *."

It is to be observed that the object and scope of the suit so authorized are two-fold: (1) to recover a judgment for the state's claim for taxes and in default of the payment thereof to have a decree forfeiting the corpora-

tion's charter, rights and franchises, which relief is made mandatory by the statute; and (2) to appoint a receiver, enjoin the corporation from operating and liquidate its assets, which relief is merely optional or discretionary, and is awarded, if awarded at all, after the charter has been decreed forfeited.

If the corporation's existence is utterly annihilated for all purposes by the decree forfeiting its charter, rights and franchises, nothing whatever could be done in the case thereafter. The suit would necessarily abate, since there would then be no defendant. *Greenbrier Lumber Co.* v. *Ward,* 30 W. Va. 43, 3 S. E. 227; *Chicago Title & Trust Co.* v. *Wilcox Building Corp.,* 302 U. S. 120, 58 S. Ct. 125, 82 L. Ed. 147; 16 Fletcher Cyc. Corporations, sec. 8113. The fact that the statute provides for elaborate proceedings thereafter, which, from their nature, may continue from term to term, clearly presupposes that the corporation must survive the decree forfeiting its charter, at least to the extent of enabling it to continue to be a defendant in the suit.

Further, the statute very plainly contemplates that the court shall continue to have jurisdiction over the property of the corporation, either through its receiver or otherwise, after the decree in which the charter was forfeited, and that such property, real and personal, shall be reduced to cash in the suit and its proceeds applied to the debts of the corporation or distributed as surplus to the stockholders. This necessarily means that the title to the corporate property, real and personal, still remains before the court after the decree forfeiting its charter, rights and franchises for such time, however long, as may be necessary to reduce the assets to cash and liquidate the corporation's business. Such title can remain before the court only by its continuing to be held by the corporation itself. The receiver takes no title, but only the custody and possession of the corporation's assets. The state, which is the sole plaintiff, has no title under any law existing in this state. New parties are not required or authorized to be brought in to keep the title before the court. Upon no theory, therefore, which we

perceive can the court continue to liquidate the assets of the corporation except that the title thereto is kept before the court by the corporation's continued presence before the court, with surviving capacity to hold title to its property. The corporation must necessarily retain sufficient existence for that purpose.

Also, the statute provides that the court in the forfeiture suit may "grant an injunction against any such corporation." This clearly implies that the corporation continues to have sufficient existence to be the object of an injunctive order.

We conclude, therefore, that, notwithstanding the fact that the statute required the court to decree the corporation's charter, rights and franchises forfeited and that the court did so order, the corporate character of the Peora Coal Company still survived sufficiently to continue as a party defendant in the suit in which the decree was entered and to hold and keep before the court the title to its property, as well as to be the subject of an injunction.

But does this capacity of the corporation to be a party to the suit and to hold title to its former property and be enjoined, survive the termination of the suit in which the charter, rights and franchises were forfeited? There is nothing in the statute on which the forfeiture is based which denies such survival, nor anything in the decree of the court in this case as to this particular corporation. The power of the corporation to survive to this limited extent was not created, nor supported, by the forfeiture suit; on the contrary, the very suit itself, after the decree of forfeiture, was supported by the corporation's continued existence. The termination of the suit deprived the corporation of no support, and in no way affected such survivor as is impliedly authorized by the statute. It follows, then, that whatever may be its situation in law, the corporation's capacity to be a party to a suit in equity where its former property or rights are involved survives the suit in which its charter, rights and franchises were forfeited. All former cases in this Court, sustaining the right and capacity of a corporation to sue and be sued

after the forfeiture of its charter, have relied on the express provisions of section 59, chapter 53, Code 1923, without evaluating or construing the statute specifically applicable to those whose charter has been forfeited under the statute which is now section 77, article 12, chapter 11, Code 1931. We, therefore, consider our present holding no departure from our earlier cases. The demurrer to plea No. 2, therefore, should have been sustained.

It is argued, however, that, upon the authority of *Jones* v. *Young,* 115 W. Va. 225, 174 S. E. 885, the Peora Coal Company could not continue as a *de facto* corporation after the decree forfeiting its charter. This proposition of law is absolutely correct. But the very limited purposes for which we find it surviving fall far short of making it a *de facto* corporation. The case of *Jones* v. *Young, supra,* merely decided that after forfeiture of its charter, a corporation cannot continue to transact business. Liquidating its business is not doing business. *Comstock* v. *Droney Lumber Company,* 69 W. Va. 100, 71 S. E. 255. A *de facto* corporation is a perfect corporation, with all its powers, except strict legality of existence, which can be questioned only by the state. 1 Thompson on Corporations (3rd Ed.), sec. 247; 8 Fletcher Cyc. Corporations, sec. 3761.

The question still remains whether or not, on the hearing, the defendant should have prevailed on plea No. 1. In our judgment, the evidence presented to the chancellor failed to sustain it, but, on the contrary, disproved the allegation that the cause of State v. A. Holt & Company was still pending. The full record of that case was not presented to the trial court. Sufficient parts of that record, however, were introduced to show that the cause was regularly matured and the decree of forfeiture regularly entered by default, and that a sufficient amount of the property of the corporation was liquidated to pay off and discharge the state's claim with the corporation's pro rata cost of the suit. We have copies of three orders entered in the case: (1) an order entered on May 11, 1939, approving certain disbursements of the receiver in what is called his "final report". This order concludes with

598

this sentence: "It is further adjudged, ordered and decreed that this cause be, and the same is hereby retired from the docket, as to said Peora Coal Company." (2) On the 10th day of June, 1939, another order was entered concluding with the same sentence, and (3) on December 12, 1939, a third order was entered using the same concluding words. With these orders before the trial chancellor, it was clearly apparent that the cause of State v. A. Holt & Company, so far as the Peora Coal Company was concerned, was terminated and no longer pending when the present suit was instituted.

It is suggested that the successive decrees, each purporting to retire the case from the docket, must be so construed that the case was either not effectively terminated by being "retired from the docket", or that by some means it was repeatedly restored. But there is nothing in the record to show such restoration, and nothing to indicate that the first of these orders purporting to retire the case was not a final order. A fuller order might have been preferable, but we can only give to this sentence the meaning which its words plainly convey, namely, that the cause was terminated May 11, 1939. Even if the cause was in some undisclosed manner revived or restored to the docket by the subsequent decrees, we still arrive inevitably at the same conclusion, since the last order before us again orders the cause retired from the docket, and this decree also was entered before the institution of the suit at bar.

It, therefore, follows that the action of the chancellor in overruling the demurrer to plea in abatement No. 2 must be reversed, and that his further action in sustaining plea No. 1 upon the hearing must likewise be reversed; and the cause will be remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*