## HENKELS *v.* SUTHERLAND, ALIEN PROPERTY CUSTODIAN, ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE
SECOND CIRCUIT.

No. 318. Argued May 5, 6, 1926.—Decided May 24, 1926.

In a suit by an American citizen under the Trading with the Enemy
Act to recover the proceeds of property mistakenly seized and sold
as enemy property, which were deposited with the Treasurer of the
United States and by him invested in interest-bearing securities of
the United States, the plaintiff is entitled to an accounting for the
interest derived from such investment, as well as the principal.
P. 300.

4 Fed. (2d) 988, reversed.

APPEAL from a judgment of the Circuit Court of Appeals which affirmed a judgment of the District Court (298 Fed. 947) dismissing the bill in a suit under the Trading with the Enemy Act, in which the plaintiff, Henkels, sought an accounting for interest.

*Mr. Herbert R. Limburg,* with whom *Messrs. Henry L. Sherman* and *Harry F. Mela* were on the brief, for appellant.

*Mr. Dean Hill Stanley,* Special Assistant to the Attorney General, with whom *Solicitor General Mitchell* and *Assistant Attorney General Letts* were on the brief, for appellees.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This is a suit in equity, under § 9(a) of the Trading with the Enemy Act, c. 106, 40 Stat. 411, 419, as amended by c. 6, 41 Stat. 35 and c. 241, 41 Stat. 977, brought by Henkels, a citizen of the United States, in the federal district court for the Southern District of New York, to

recover the proceeds of the sale of 2,298 shares of common stock of International Textile, Inc., a Connecticut corporation, theretofore seized by the Alien Property Custodian upon the claim that it was the property of an alien enemy. A decree was rendered in Henkels' favor, adjudging him to be the sole owner of the stock; and the Treasurer of the United States was directed to account for, and pay over to Henkels, the proceeds of the sale "together with the income or interest, if any, earned thereon." There was realized from the sale of the stock, made on March 26, 1919, after deducting expenses, a balance of $1,505,052.55. This amount the Treasurer paid to Henkels. Subsequently, Henkels applied to the district court to name a master to take and state the account of interest or income earned upon the fund prior to its payment. The application was denied and a final decree of dismissal entered upon the ground that the principal sum had been paid to Henkels, who had executed a release and satisfaction in full which the court refused to set aside on the claim of duress. 298 Fed. 947. Upon appeal, the circuit court of appeals, without passing upon this ground, held that the United States was not liable for income resulting from an investment of the funds in its own securities. 4 Fed. (2d) 988.

The proceeds arising from the sale of the stock were deposited with the Treasurer in conformity with law; and by that officer they were commingled with the proceeds of other sales of alien property and invested in interest-bearing securities of the United States. The Government admits Henkels' right to recover income earned on the corporate shares prior to their sale, but denies his right to recover for interest actually paid on Government securities in which the proceeds had been invested. This presents the only question for our determination, the Government having expressly waived the point upon which the district court decided the case.

No question is made in respect of the right of the Custodian to seize property supposed to belong to an enemy, although it may subsequently turn out to have been a mistake, adequate provision having been made for a return in that case. *Central Trust Co.* v. *Garvan,* 254 U. S. 554, 566; *Stoehr* v. *Wallace,* 255 U. S. 239, 245.

By Executive Order No. 2813 of February 26, 1918, made pursuant to law, moneys deposited with the Treasurer by the Custodian are to be held by the Secretary of the Treasury "for account of the Alien Property Custodian," and may be invested and reinvested from time to time in bonds or United States certificates of indebtedness. All moneys so deposited, together with interest or income received from the investment thereof, are made subject to withdrawal by the Secretary of the Treasury for the purpose of making payments pursuant to the provisions of the Trading with the Enemy Act, which would include, of course, payments under § 9(a).

Section 9(a) authorizes a suit in equity by any person not an enemy, etc., to determine a claim to any interest, right or title in the property seized. If, in the meantime, the seized property has been sold, the same remedy, by § 7(c), as amended, c. 201, 40 Stat. 1020, becomes available "against the net proceeds received therefrom and held by the Alien Property Custodian or by the Treasurer of the United States." No distinction in this respect is made between the property and its proceeds. It cannot be doubted that, if the seized property had been securities of the United States and these, thereafter, had been held in their original form, maturing coupons for interest would have belonged to the American claimant equally with the body of the bonds. In principle, there can be no difference between such a case and the one here, where claimant's property had been converted into securities of the United States. Such securities constitute the statutory "net proceeds," and, by the clear import of the

statute, claimant's rights in respect of such proceeds are not inferior to his rights in respect of the original property. And no distinction fairly can be made between the accumulated interest upon securities constituting the proceeds, in the one case, and like securities constituting the property, in the other.

The Government cannot be sued without its consent; and, accordingly, it cannot be sued for interest unless it consents to be liable therefor. But the claim here is not for interest to be paid by the United States in the sense of the rule. It is for income, derived from an investment of Henkels' money in obligations of the United States, which income has been actually received by the Treasury and is in its possession to be held, as the proceeds themselves are to be held, for the account of the Alien Property Custodian.

With enemy-owned property seized by the Custodian, it has been held, the United States may deal as it sees fit, *White* v. *Mechanics' Securities Corporation,* 269 U. S. 283; but it has no such latitude in respect of the property of an American citizen. Whether the Government shall pay interest upon its obligations depends upon Congressional assent; but it cannot confiscate the actual increment of property belonging to a citizen, or the increment of the proceeds into which such property has been converted, any more than it can confiscate the property or its proceeds, without coming into conflict with the Constitution.

The Government contends that *Angarica* v. *Bayard,* 127 U. S. 251, is to the contrary, and the court below so held. In that case, the suit was for interest or income realized upon the amount of an award in favor of Angarica paid by the Spanish Government to the United States. This court, in denying the right of recovery, applied the general rule of immunity from interest, saying (pp. 259–260) that the claim " is not different in char-

acter from what it would have been if, instead of being a claim for increment or income actually received by the United States, it were a claim for interest generally, or for increment or income which the United States would or might have received by the exercise of proper care in the investment of the money." Without challenging the correctness of this view as applied to the precise facts of that case, it cannot be accepted as a rule of general application. Especially, it cannot be accepted as applicable here, where the property of a citizen has been mistakenly seized and, by executive authority, after conversion into money, has been invested in government securities. We cannot bring ourselves to agree that a direction to invest such money in securities of the United States, rather than in other securities, may be utilized to enable the Government unjustly to enrich itself at the expense of its citizens, by appropriating income actually earned and received which morally and equitably belongs to them as plainly as though they had themselves made the investment.

Since the proceeds resulting from the sale of Henkels' property have been commingled with the proceeds of other sales and thus invested, an account must be taken to ascertain the average rate of interest received by the Treasury upon all the proceeds invested and, thereupon, after deducting proper charges and expenses and taking into consideration the average amount of such proceeds which remained uninvested in the Treasury, a proportionate allocation made in respect of the proceeds belonging to Henkels for the period of their investment. Compare *The Distilled Spirits*, 11 Wall. 356, 368–369; *Intermingled Cotton Cases*, 92 U. S. 651, 652–653; *Duel v. Hollins*, 241 U. S. 523.

*Decree reversed.*