### CHEMISCHE FABRIK VON HEYDEN AKTIENGESELLSCHAFT v. TAIT, Collector of Internal Revenue.

#### No. 4569.

District Court, D. Maryland.
May 19, 1932.

Adrian C. Humphreys and Newton K. Fox, both of New York City, and Janney, Ober & Williams, of Baltimore, Md., for plaintiffs.

Simon E. Sobeloff, U. S. Atty., and James K. Cullen, Asst. U. S. Atty., both of Baltimore, Md., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue and R. P. Hertzog, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

CHESNUT, District Judge.

This is a suit at law by the plaintiff to recover income tax collected for the year 1919 in the amount of $160,254.17. The defenses are: (a) That the tax (with the exception of the amount of $3,095.90, which has been refunded since the beginning of the suit) was properly due and payable; (b) that the plaintiff's claim for refund was not filed within four years after the payment of the tax, as is required by Rev. St. 3228 (title 26, USCA § 157); and (c) that if any amount of tax is recoverable, only 78 per cent. is payable to the plaintiff and the remaining 22 per cent. is payable to the Alien Property Custodian. At the hearing, for the first time, application was made by the plaintiff to make Howard Sutherland, Alien Property Custodian, a party plaintiff, by amendment of the declaration. The motion was taken under advisement. The case has been submitted on an agreed statement of facts and in addition thereto, the plaintiff has offered in evidence two exhibits. A jury trial has been waived in writing.

The substantial question raised is whether property of an alien enemy seized under the "Trading with the Enemy Act" is, when returned under the "Settlement of War Claims Act," subject to deduction for income taxes for gain on capital assets resulting from a sale made by the Alien Property Custodian; but under the pleadings the question is perhaps the narrower one, whether such taxes paid by the Custodian to the Collector may be recovered by the former alien, from the collector.

The agreed statement, much abridged, and not changed by the exhibits, shows the following facts:

The plaintiff is a corporation under the laws of Germany, engaged in the manufacturing and selling of chemical products. At the beginning of our war with Germany in 1917, this German corporation owned 747 out of a total issue of 750 shares of the par value of $200 each, in a New Jersey corporation which it had organized as a subsidiary in 1900. About July 17, 1918, the Alien Property Custodian, acting under the provisions of the Trading with Enemy Act (50 USCA Appendix), seized the 747 shares of stock and had a new certificate issued therefor in his name. On March 27, 1919, he sold this stock for $1,300,000. He set up on his books a record of the transaction designated as "Trust No. 23907" in the name of the plaintiff. The plaintiff was an alien enemy during the war and, of course, filed no income tax return and in fact was not doing business in any way in the United States.

On March 15, 1924, pursuant to the provisions of section 3176, Rev. St. (title 26, section 97, USCA), the Deputy Collector of Internal Revenue for the District of Maryland prepared an income and excess profits tax return for the year 1919 in the name of the plaintiff showing a tax payable in the sum of $503,206.46. The computation was based on the profit arising from the sale of the stock, taking its original value at its par of $200 per share. On March 28, 1924, the Commissioner of Internal Revenue made an assessment for the tax in the name of the plaintiff (and also designating the number of the trust, as above given on the books of the Alien Property Custodian); and on March 31, 1924, the Alien Property Custodian paid the tax out of the fund arising from the sale.

On January 21, 1926, plaintiff's attorney filed with the Commissioner of Internal Revenue his written appointment under power of attorney from the plaintiff, and on February

23, 1926, the same attorney (Adrian C. Humphreys) filed a similar power of attorney from Howard Sutherland, Alien Property Custodian, dated February 9, 1926; and on February 16, 1926, Mr. Humphreys, as attorney in fact for the Alien Property Custodian (for Chemische Fabrik von Heyden Aktiengesellschaft Trust No. 23907) filed a claim for refund with the Commissioner of Internal Revenue and stated as reasons therefor, among others, that the tax had been wrongfully computed and the profits realized from the sale were not subject to taxation in the hands of the Alien Property Custodian. And on April 12, 1928, the same attorney filed another claim for refund in the name of the plaintiff corporation setting out more specifically the reasons for the refund previously stated in the earlier claim. The fourth and fifth reasons for the refund as given in the latter claim are as follows:

"4. The seizure and sale of the taxpayer's property by the Alien Property Custodian as an act of war, was involuntary and without the owner's consent and is, therefore, a transaction which can result in no profit or loss and is not subject to tax under Revenue Act of 1918.

"5. The sale of the property mentioned herein is not subject to income or excess profits tax for the reason that upon seizure it became the property of the United States and as such is not subject to taxation."

On April 20, 1929, the Commissioner notified the Alien Property Custodian that the tax had been recomputed in the amount of $160,254.17, thus showing an overassessment in the original tax of $342,952.29, which amount was duly refunded to the Alien Property Custodian. The reduction in the tax on recomputation was based largely on substituting the March 1, 1913, value of the stock in lieu of the par value for determination of the realized profit from the sale. On March 12, 1931, the Commissioner again notified the Alien Property Custodian of a further reduction in the tax and refunded the amount of the overassessment, to wit, $3,095.90.

On July 13, 1928, plaintiff filed with the Alien Property Custodian its claim for return of property held in Trust No. 23907, and on or about April 25, 1929, the Alien Property Custodian paid to the plaintiff 78 per cent. of the balance of the funds then in trust, and has also paid to the plaintiff 78 per cent. of the amount of the refunded taxes. The claims for refund filed by the Alien Property Custodian, to the extent not allowed, were rejected by the Commissioner.

The principal contention of the plaintiff is that no income tax could be lawfully imposed on this fund because the plaintiff was an alien enemy during the year 1919, for which the tax was assessed, and then had no interest whatever in the property, which was absolutely owned by the United States and, therefore, not subject to taxation. Reference is made to federal appellate decisions defining the character of the holding of alien enemy property by the Alien Property Custodian as follows: United States v. Chemical Foundation, 5 F.(2d) 191, 207 (C. C. A. 3), where the court said: "Upon seizure the title of the enemy-owners was not held 'in suspension' but passed out of them and became vested, legally or beneficially, in the United States." (Affirmed on appeal, 272 U. S. 1, 47 S. Ct. 1, 71 L. Ed. 131.) And Commercial Trust Co. of New Jersey v. Miller, 262 U. S. 51, 56, 43 S. Ct. 486, 488, 67 L. Ed. 858, where it was said: "Besides, under the act, it is to be remembered, the Custodian succeeds to all the rights in the property to which the enemy is entitled as completely as if by conveyance, transfer or assignment." Henkels v. Sutherland, 271 U. S. 298, 302, 46 S. Ct. 524, 70 L. Ed. 953, 51 A. L. R. 229, and Munich Reinsurance Co. v. First Reinsurance Co., 300 F. 345 (D. C. Conn.).

The contention is also stated in the form of the proposition that as the alien was divested of all property interest, no income accrued to it and, therefore, it had no income to tax because the Revenue Act (40 Stat. 1057) can only reach realized income. Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570.

But in my opinion, the conclusion contended for is not sound in view of the acts of Congress passed during and subsequent to the war and dealing with the subject of enemy property held by the Alien Property Custodian during the war and thereafter until authorized to be returned under the act of Congress. The war, of course, brought about many new conditions and complications, and the history of the legislation in Congress shows that the subject was being dealt with progressively and in the light of developments as they occurred during and after the war. The legislation consists of two important acts known as the "Trading with the Enemy Act of October 6, 1917," with many amendments, and the more recent legislation, "Settlement of War Claims Act of March

10, 1928." Convenient reference to this legislation can be found in 50 USCA, Appendix, pages 189 and following. It will help to an understanding of the matter now under consideration to make reference to some of the statutes particularly dealing with the subject-matter.

By section 6 of the "Trading with the Enemy Act" (50 USCA Appendix § 6), as originally passed, provision was made for the appointment of the Alien Property Custodian, who was to hold, administer and account for the property received under the general direction of the President.

Section 12 of the original Trading with the Enemy Act (50 USCA Appendix § 12) provides, in part: "After the end of the war any claim of any enemy or of an ally of enemy to any money or other property received and held by the alien property custodian or deposited in the United States Treasury, shall be settled as Congress shall direct." And the section also now provides: "The alien property custodian shall be vested with all of the powers of a common-law trustee in respect of all property, other than money, which has been or shall be, or which has been or shall be required to be, conveyed, transferred, assigned, delivered, or paid over to him in pursuance of the provisions of this Act, and * * * shall have power to manage such property and do any act or things in respect thereof or make any disposition thereof or of any part thereof, by sale or otherwise, and exercise any rights or powers which may be or become appurtenant thereto or to the ownership thereof in like manner as though he were the absolute owner thereof."

The Act of July 1, 1918, chapter 113, § 1, 40 Stat. 646 (50 USCA Appendix § 24 note), provided that all taxes lawfully assessed by any body politic against property held by the Alien Property Custodian should be paid out of funds in his hands. As amended by what is known as the Winslow Act of March 4, 1923 (42 Stat. 1511, which has now become subsection a of section 24 of the Trading with the Enemy Act [50 USCA Appendix § 24 (a)]), the language is: "The Alien Property Custodian is authorized to pay all taxes (including special assessments), heretofore or hereafter lawfully assessed by any body politic against any money or other property held by him or by the Treasurer of the United States under this Act."

And subsections (b) and (c) of section 24, added by Act of March 10, 1928, chapter 167, section 18, known as "Settlement of War Claims Act" (50 USCA Appendix § 24 (b, c), provide as follows:

"(b) In the case of income, war-profits, excess-profits, or estate taxes imposed by any Act of Congress, the amount thereof shall, under regulations prescribed by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury, be computed in the same manner (except as hereinafter in this section provided) as though the money or other property had not been seized by or paid to the Alien Property Custodian, and shall be paid, as far as practicable, in accordance with subsection (a) of this section. Pending final determination of the tax liability the Alien Property Custodian is authorized to return, in accordance with the provisions of this Act, money or other property in any trust in such amounts as may be determined, under regulations prescribed by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury, to be consistent with the prompt payment of the full amount of the internal-revenue taxes.

"(c) So much of the net income of a taxpayer for the taxable year 1917, or any succeeding taxable year, as represents the gain derived from the sale or exchange by the Alien Property Custodian of any property conveyed, transferred, assigned, delivered, or paid to him, or seized by him, may at the option of the taxpayer be segregated from the net income and separately taxed at the rate of 30 per centum. This subsection shall be applied and the amount of net income to be so segregated shall be determined, under regulations prescribed by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury, as nearly as may be in the same manner as provided in section 208 of the Revenue Act of 1926 (relating to capital net gains), but without regard to the period for which the property was held by the Alien Property Custodian before its sale or exchange, and whether or not the taxpayer is an individual."

Section 9 of the Trading with the Enemy Act, with its many amendments (50 USCA Appendix § 9), provides for the return of property held by the Custodian, and it is under this section as amended by the Settlement of War Claims Act of 1928, that the plaintiff in this case on July 13, 1928, filed its claim for return of its former property which had been seized and which, as already stated, has been returned to the extent mentioned.

These statutes show very clearly that

Congress intended that enemy property held by the Alien Property Custodian should be subject to current taxation substantially and as nearly as possible in the same way and to the same extent as the property of citizens or friendly aliens.

It is clear that the plaintiff's property was not absolutely confiscated while held by the Alien Property Custodian. It is true that it had no right or title therein which he could then enforce until authority was given by the further act of Congress, but the substantial situation in expectation was that its rights would probably be restored in some form or to some extent when it was determined by Congress what disposition should finally be made of the property. Swiss National Insurance Co. v. Miller, 267 U. S. 42, 45 S. Ct. 213, 69 L. Ed. 504; United States v. Chemical Foundation, 272 U. S. 1, 47 S. Ct. 1, 71 L. Ed. 131. In this situation, it seems clear that Congress did not lack power to subject the property to deductions for current expenses of the government. And there is certainly no injustice in subjecting alien enemy property to the same taxation as affected the property of our citizens. In this case it is not contended that the tax as ultimately computed involved any discrimination against the alien property. It is true, of course, that the sale of the plaintiff's property was involuntary so far as it was concerned, but this consideration is met by subsection (d) of section 24 of the act (50 USCA Appendix § 24 (d), which makes applicable to sales of such property the provisions of the general income tax laws applicable to property compulsorily or involuntarily converted.

█ In the view I take of the matter the dominant and controlling consideration is that the "Settlement of War Claims Act" was an act of grace of the sovereign United States, and in returning the property this Government undoubtedly had the clear right to impose such terms and conditions as it pleased Congress to enact. The property could have been withheld entirely or confiscated beyond any legal right or remedy of the plaintiff. The sole question of law which, therefore, controls the matter is: What was the intention of Congress as to the terms and conditions on which the property should be returned to the former alien enemy? And the answer to this, I think, must be found in the legislation which has been reviewed and which, in my opinion, particularly as evidenced by subsections (b), (c), (d), (e), and (f) of section 24 of the Trading with the Enemy Act (coming from the Settlement of War Claims Act

of March 10, 1928, 50 USCA Appendix § 24 (b–f), shows beyond any reasonable doubt that the intention of Congress was to return only the corpus of the property remaining after the payment of taxes and other expenses thereout; and the taxes referred to are expressly stated to include income and excess profits taxes computed on gain derived from the sale of property by the Alien Property Custodian for the taxable years 1917 and succeeding years. Obviously the intention was to make the property subject retroactively to taxes for the designated years. If, therefore, the tax had not previously been paid by the Alien Property Custodian, it was the intention of this legislation to require the determination and payment of the tax before the return of the property to the former alien enemy.

This view of the law has recently been applied to a similar case by the United States Board of Tax Appeals in the case of Paul Haberland v. Com'r of Internal Revenue, 21 B. T. A. 446, where, construing section 24 of the Trading with the Enemy Act, as being conclusive on the subject, the Board said: "In section 24 of the Trading with the Enemy Act Congress has specifically applied the taxing acts to income arising out of property held by Custodian. The intent of Congress to apply the amendment of 1928 retroactively is manifest from the wording of subsection (b), referring as it does to 'income, war-profits, excess-profits, or estate taxes imposed by any Act of Congress.' At the time the amendment of 1928 was enacted the taxing acts imposing profits taxes had been repealed and unless the amendment is applied retroactively, the reference therein to such taxes is meaningless." Kahle v. Commissioner, 43 F.(2d) 61 (C. C. A. 8), certiorari denied 282 U. S. 892, 51 S. Ct. 106, 75 L. Ed. 786, and Ferguson v. Forstmann, 25 F.(2d) 47 (C. C. A. 3), also upheld income taxation under similar though not identical situations. In the Kahle Case, as in the instant case, the return on which the tax was based was made by the Deputy Collector. Against the contention that he lacked authority to do so, the court held that the action of the Deputy Collector was authorized and proper.

█ A minor contention of the plaintiff in this case is that the tax was irregularly imposed because the assessment was made in the name of the plaintiff corporation which was not and could not be a taxpayer for the year 1919. It is to be noted, however, that the assessment also made reference to the particular trust in which the property was

held by the Alien Property Custodian. The contention is that the property if taxable at all, should have been assessed in the name of the Alien Property Custodian. The point seems to me at most an irregularity of no material consequence in view of the whole situation.

With regard to the application to amend the declaration by including the present Alien Property Custodian as a party plaintiff, I had some doubts as to whether the amendment should be allowed. Reference is made by counsel for the plaintiff to the case of Kombst v. United States (Ct. Cl.) 52 F.(2d) 1030, 1032, where suit by a former alien enemy for a return of estate taxes improperly assessed during the war period was sustained. It is said, however, by counsel that after the decision was reported, it was called to the attention of the court that the suit could only properly have been prosecuted by the Alien Property Custodian. In the opinion, it is said: "If there is a refund allowed it must be paid to the Custodian, who is now in control of the corpus." And as the Custodian was not a party to the suit, counsel state that he was made a party subsequent to the rendition of the opinion.

The first claim for refund in this case was filed in the name of the Alien Property Custodian by one of the present counsel for the plaintiff in this case. If there could be any recovery in this case, it seems clear to me that only 78 per cent. thereof would be payable to the plaintiff directly, and the remaining 22 per cent. would be payable to the Alien Property Custodian. If the conclusion which I have reached is correct, the point as to the amendment becomes unimportant, but in order to enable the plaintiff to have no defect in procedure in this case, I have allowed the amendment.

I have also had some question as to whether the plaintiff had any right to maintain this suit in its own name. The contention of its counsel is that the plaintiff had no interest or right whatever in the property at the time the tax is alleged to have become due, and none when it was paid by the Custodian. On this theory it seems to me highly doubtful if the plaintiff in its own name has any standing whatever in court to recover a tax paid by the Custodian to the Collector of Internal Revenue. The suit is against the latter personally although, no doubt, any recovery would be paid by the government. It seems quite inconsistent to me, on the plaintiff's theory of the case, to permit the plaintiff to recover against the defendant, a tax paid to the defendant by a third person out of property in which, at the time, the plaintiff had no interest whatever. As the rights of the plaintiff to a return of its property came only from section 9 of the Trading with the Enemy Act (as amended in 1928 [50 USCA Appendix § 9]), it would seem to logically follow that its only right of recovery, if any, is against the Alien Property Custodian. However, there is the possible view to be taken that the effect of the return of its property to the plaintiff by the Custodian is in the nature of an assignment of all claims of the Custodian with respect to the original corpus. The Kombst Case, above cited, seems to imply that the right to recover the tax paid out of corpus follows the original control of the corpus. And possibly a right of suit by the plaintiff in this case may be implied from subsection (f) of section 24 of the Trading with the Enemy Act (50 USCA Appendix § 24 (f). But as I hold the tax is not recoverable at all, it is not necessary to rule upon this point of procedure.

And likewise, I find it unnecessary to rule upon the defense that the claim for refund as made by the plaintiff is not within the four years period. It would appear that it was filed within the period allowed to the plaintiff in subsection (f) of section 24. And the earlier claim for refund filed by the Custodian was within the limited period if the plaintiff is entitled to the benefit of the act of the Custodian.

The clerk is instructed to enter a verdict for the defendant, with exception noted for the plaintiff. On this disposition of the case it becomes unnecessary to rule on the plaintiff's requested instructions.