**AMOCO OIL COMPANY, Plaintiff,**

v.

**Frank G. ZARB et al., Defendants.**

**STANDARD OIL COMPANY OF CAL-
IFORNIA et al., Plaintiffs,**

v.

**William E. SIMON et al.,
Defendants.**

**EXXON CORPORATION et al.,
Plaintiffs,**

v.

**William E. SIMON et al.,
Defendants.**

**MOBIL OIL CORPORATION,
Plaintiff,**

v.

**Frank G. ZARB et al.,
Defendants.**

**TEXACO, INC., Plaintiff,**

v.

**William E. SIMON et al., Defendants.**

**DOME PETROLEUM CORPORA-
TION, Plaintiff,**

v.

**William E. SIMON et el.,
Defendants.**

**The STANDARD OIL COMPANY
et al., Plaintiffs,**

v.

**FEDERAL ENERGY ADMINISTRA-
TION et al., Defendants.**

**SUN OIL COMPANY, Plaintiff,**

v.

**Frank G. ZARB et al.,
Defendants.**

Civ. A. Nos. 75–1579, 75–1581, 75–1591, 75–
1594, 75–1595, 75–1602, 75–1607,
75–1662.

United States District Court,
District of Columbia.

Oct. 16, 1975.

Fred H. Bartlit, Jr., Thomas A. Gottschalk, Mary D. Allen, Kirkland & Ellis, Chicago, Ill., James M. Johnstone, Kirkland & Ellis, Washington, D. C., Martin J. Keating, Standard Oil Co. of Indiana, Chicago, Ill., for Amoco Oil Co.

Rex E. Lee, Asst. Atty. Gen., Civ. Div., U.S. Dept. of Justice, Irving Goldbloom, Deputy Atty. Gen., Civ. Div., Stanley D. Rose, C. Max Vassanelli, and Barrie E. Goldstein, Attys., Civ. Div., U.S. Dept. of Justice, Washington, D. C., for defendants in all cases.

Lee Loevinger, David J. Hensler and George U. Carneal, Washington, D. C., for Standard Oil Co. in 75–1581.

William H. Allen and John A. Hodges, Covington & Burling, Washington, D. C., Exxon Corp.

Robert L. Norris, Jr., Houston, Tex., and Baker & Botts, Washington, D. C., for plaintiffs in 75–1591.

John D. Heckert, Peter Buck Feller, McClure & Trotter, Washington, D. C., for Mobil Oil Corp.

John J. Wilson and Frank H. Strickler, Washington, D. C., for Texaco, Inc.

Charles W. Petty, Jr., and James R. Henderson, IV, Washington, D. C., for Dome Petroleum Corp.

John Landsdale, Jr., and Rickard F. Pfizenmayer, Cox, Langford & Brown, Washington, D. C., for Standard Oil Co. in 75–1607.

George J. Dunn, VP and Gen. Counsel, Standard Oil Co. and David A. Nelson, Squire, Sanders & Dempsey, Cleveland, Ohio, for additional plaintiffs in 75–1607.

Ronald M. Dietrich and Richard M. Rindler, Pepper, Hamilton & Scheetz, Washington, D. C., Edward J. Ciechon, Jr., Sun Oil Co., Philadelphia, Pa., for Sun Oil Co.

### MEMORANDUM OF FINDINGS OF FACT AND CONCLUSIONS OF LAW

FLANNERY, District Judge.

These matters come before the court on plaintiffs' motions for a preliminary injunction making conditional the payment of oil import license fees pending final judicial determination of the legality of the license fee program. Upon consideration of the pleadings and memoranda submitted by plaintiffs, the defendants' opposition thereto, and the arguments of counsel thereon, this court makes the following findings of fact and conclusions of law.

*Findings of Fact*

1. Plaintiffs in these consolidated cases are corporations engaged in the production and distribution of petroleum products and in the importation into the United States of substantial volumes of crude oil and petroleum products.

2. Defendant William E. Simon, the Secretary of the Treasury of the United States, is the governmental official primarily responsible for administration of the oil import system and its impact upon the economy. Defendant Frank G. Zarb ("Administrator") is the administrator of defendant Federal Energy Administration ("FEA"), a federal agency, and in that capacity has the duty of implementing the system of import license fees on the importation of crude oil and petroleum products which was instituted by Presidential Proclamation No. 3279, as amended.

3. The system of oil import license fees which is the subject matter of these actions was established by Presidential Proclamation No. 3279, as amended ("Proclamation"). The primary statutory provision relied on as authorizing the Proclamation was 19 U.S.C. § 1862(b) (1970).

4. Section 3(a)(1) of the Proclamation imposes certain fees for the issuance of import licenses. Most crude oil, unfinished oils, and finished petroleum products cannot be imported into the United States without such licenses. Base fees range from $.21 to $.63 per barrel. In addition to the base license fee, a supplemental fee of $1.00 per barrel was imposed on all imports during the period February through May 1975, and a supplemental fee of $2.00 per barrel is imposed on all imports into the United States on and after June 1, 1975.

5. The fees imposed under the Proclamation are not designed to raise revenue for the United States government, but to reduce the volume of petroleum imported by plaintiffs and other similarly situated parties. The government permits the oil importers, currently operating under stringent price controls, to pass through the expense of the license fees to consumers; the increased price paid by consumers should reduce the consumption of petroleum products, thereby reducing the need for imported oil. Thus, the fees here in issue are an integral part of the administration's energy program.

6. Under the Proclamation and regulations issued thereunder by the FEA, an importer must pre-pay all license fees or post a bond to guarantee payment of all fees in order to obtain a license for the importation of crude oil and petroleum products. All fees must be paid by the end of the month following the month in which crude oil and petroleum products are imported. *See* 10 C.F.R. § 213.35(a)(4) (1975).

7. If a party owing license import fees fails to tender payment to the government, defendants may proceed against the sureties on the bonds posted to guarantee import fee payments, the Administrator may refuse to grant further applications for additional import licenses until the fees due are paid, and, should a bond be terminated prior to payment of the fees due, or should the face value of the bond be reduced below the amount of outstanding liability for payment of fees due under the license issued pursuant to the bond, defendants would immediately revoke the party's license. *See* 10 C.F.R. §§ 213.35(a)(4), (b)(2) (1975).

8. Shortly after the January 23, 1975 amendments to the Proclamation, substantially increasing oil import license fees, the validity of the license fee system was challenged in a group of related cases filed in the United States District Court for the District of Columbia. On February 21, 1975, the district court issued an opinion in the consolidated cases styled *Massachusetts v. Simon*, Civil Action No. 75–0219 (D.D.C. February 21, 1975), upholding the President's authority to impose the license fee program.

9. An appeal was taken from the district court's decision in *Massachusetts v.*

*Simon,* and on August 11, 1975, the United States Court of Appeals for the District of Columbia, in the consolidated appeals styled *Algonquin SNG, Inc., v. FEA,* 518 F.2d 1051 (D.C.Cir.1975), issued a decision holding that the President lacked authority under 19 U.S.C. § 1862(b) (1970) to impose import fees and that the regulations implementing the fee program should be set aside.

10. On August 21, 1975, the Court of Appeals issued an order staying its mandate in *Algonquin* until September 15, 1975.

11. On September 10, 1975, the Department of Justice filed a Petition for Writ of Certiorari with the Supreme Court of the United States. The petition automatically extended the Court of Appeals' stay until final disposition by the Supreme Court. *See* Fed.R.App.P. 41(b). The Court has not yet acted on the petition.

12. On August 15, 1975 the FEA, through its General Counsel, issued a regulation providing that the supplementary fee payments due August 31st for imports made during July, might be deferred until September 15, 1975. The reason recited for this deferral was that the President had announced on August 15, 1975, that he would indefinitely suspend the supplemental fees on petroleum imports if Congress sustained his veto of the Emergency Petroleum Allocation Act and that resolution of this matter was not expected until after August 31st. 40 Fed.Reg. 36302 (August 20, 1975).

13. On September 10, 1975, the Senate voted to sustain the President's veto of the Emergency Petroleum Allocation Act, 121 Cong.Rec. § 15774–5 (September 10, 1975).

14. On September 11, 1975, the FEA, through its General Counsel, issued a "Notice of Further Deferral." The payments of supplemental fees incurred on imports in the month of July were thereby deferred until September 30, 1975. 40 Fed.Reg. 42578 (September 15, 1975).

15. On September 21, 1975, the Administrator announced that "import fees on crude oil and refined products imported during the months of July and August will become due and payable as of September 30, 1975, regardless of whether or not there is an extension of price controls." FEA Release 75–309, September 21, 1975. On September 22, 1975, the FEA, through its General Counsel, by a notice published in the Federal Register on September 24, 1975, stated that FEA had decided to collect supplemental fees incurred on crude oil and refined products imported during July and August and that payments for both months shall be due and payable on or before September 30, 1975. 40 Fed. Reg. 43950 (September 24, 1975).

16. The oil import license fees due from all plaintiffs on September 30, 1975, amounted to approximately $300,000,000.

17. On September 26, 1975, several of the plaintiffs in these consolidated actions filed complaints in this court seeking a declaration of their rights and duties with respect to fees asserted by defendants to be due on September 30, 1975. Plaintiffs further prayed for appropriate injunctive relief to preserve any fees plaintiffs were required to pay and the interest which would accrue thereon pending a final determination in the *Algonquin* case.

18. On September 26, 1975, subsequent to the filing of this action, the FEA issued a notice regarding the payment of oil import license fees in which it purported to clarify its position with respect to refunds in the event the Supreme Court denied certiorari or affirmed the decision of the Court of Appeals in *Algonquin.* In the notice, the FEA stated, in part, that it would waive the "voluntary payment" defense as to all fees collected after August 11, 1975 but reserved the right to raise all "other defenses that might be asserted." In the notice, the FEA also stated, in effect, that if refunds were ordered by the courts, the FEA would determine who

was entitled to the refunds. *See* 40 Fed. Reg. 45229 (September 26, 1975).

19. On September 30, 1975 this court issued a temporary restraining order directing plaintiffs to pay FEA, by October 1, 1975, license fees for plaintiffs' oil imports for July and August, 1975 upon the condition that these funds were to be held in a special account and would be repayable in full to plaintiffs pending this court's adjudication of plaintiffs' application for preliminary injunctive relief. In issuing the order, the court found that the plaintiffs would suffer immediate irreparable harm if the fees were required to be paid unconditionally on September 30, 1975, that the defendants would suffer almost no harm from conditional payment of the funds, that the public interest would be served by orderly adjudication of the matter, and that, in light of the small harm which would be suffered by the defendants as a result of issuance of the order, an adequate showing had been made of the plaintiffs' likelihood of success on the merits.

20. On October 1, 1975, the Honorable Carl O. Bue, Jr., United States District Court for the Southern District of Texas, entered a preliminary injunction in *Coastal States Gas Corp. v. FEA,* Civil Action No. 75–H–1668. The plaintiffs in the Texas litigation were oil importers seeking the same relief as the plaintiffs in the cases at bar. Judge Bue found that the Court of Appeals stayed its mandate in *Algonquin* for the purpose of allowing the government to continue to administer the license fee program pending a final disposition by the Supreme Court, but that oil importers could suffer irreparable injury if license fees were paid to the government unconditionally. In an effort to allow the continued operation of the administration's energy program while protecting the property interests of oil importers, Judge Bue directed the plaintiffs to pay

fees due on September 30, 1975, and all subsequent fees which become due, into the account created by this court's Temporary Restraining Order of September 30, 1975. Judge Bue's order is to remain in effect until such time as the Supreme Court disposes of *Algonquin* and the proper manner in which the fund should be distributed becomes clear.

*Conclusions of Law*

■ 1. In considering whether plaintiffs should be granted a preliminary injunction, the court must assess (1) whether plaintiffs will suffer immediate irreparable injury if an injunction is not issued, (2) whether the defendants will suffer greater harm from the issuance of a preliminary injunction than the plaintiffs will suffer from the denial of an injunction, (3) whether the plaintiffs are likely to prevail on the merits of this action, and (4) whether the granting of injunctive relief is in the public interest. *See Virginia Petroleum Jobbers Ass'n v. FPC,* 104 U.S. App.D.C. 106, 259 F.2d 921, 925 (1958).

■ 2. Plaintiffs, and other similarly situated oil importers, will suffer irreparable harm if they are required to pay unconditionally the import license fees due under the FEA regulations since these funds may not be recoverable from the government once they are transferred to a general treasury account. Even if the Supreme Court were to affirm the Court of Appeals' decision in *Algonquin,* sovereign immunity, the voluntary payment doctrine, or jurisdictional requirements concerning claims against the United States could prevent plaintiffs and other parties who paid fees to the government from regaining possession of the funds, thereby abrogating any proprietary rights plaintiffs and other importers may have in the sums paid.[1] Alternatively, should it be found that the fees are illegal and that the customers of plaintiffs and of other

1. Although the FEA, in its notice of September 26, 1975, purports to waive the voluntary payments defense, there is a substantial question as to the legal effect of this statement.

importers are the rightful owners of the fees, the plaintiffs and other importers may be subject to judgments in favor of these consumers while being unable to recover money held by the treasury. Without stating an opinion at this time as to what rights, if any, the plaintiffs and other oil importers have in the license fees, it appears to the court that the only adequate means of preventing the irreparable loss of whatever rights exist is the issuance of an injunction foreclosing the technical bars often foiling suits against the United States.

■ Plaintiffs and other oil importers will also be irreparably harmed if the government, while it has conditional possession of the fees in issue, is not directed to invest the funds in interest bearing treasury notes. If the fees are declared illegal and the plaintiffs and other importers successfully obtain judgments against the United States for the face amounts paid, it is certain that interest could not be awarded since prejudgment interest cannot be assessed against the government. *See United States v. New York Rayon Co.*, 329 U.S. 654, 67 S.Ct. 601, 91 L.Ed. 577 (1947); *United States v. Thayer-West Point Hotel Co.*, 329 U.S. 585, 67 S.Ct. 398, 91 L. Ed. 521 (1947); 28 U.S.C. § 2516(a) (1970). Thus, if provision is not made for the accumulation of interest at this time, the plaintiffs and other importers may forever lose substantial income to which they may be entitled or for which they may be liable to their customers. Provision for interest in these cases does not violate the prohibition concerning awards of prejudgment interest against the government because the claims here in issue are not claims against the United States, but rather are being prosecuted by the government against private parties. The fact that failure to order the accumulation of interest at this time would eventually reverse the positions of the parties and force the plaintiffs here to sue the United States only illustrates the equity in providing for interest at this stage of

the proceedings. In an analogous situation, the Supreme Court held that the government's confiscation of property under the Trading with the Enemy Act violated the fifth amendment where the property owner was not awarded the interest which accumulated on his possessions while they were improperly in the custody of the treasurer. *See Henkels v. Sutherland*, 271 U.S. 298, 301, 46 S.Ct. 524, 70 L.Ed. 953 (1926).

Defendants object to accumulation of interest on the grounds that the plaintiffs are mere conduits for these funds and that the real costs are borne by the consumer. While this very well may be a correct analysis, it is not relevant to the issues before the court at this juncture. The court today expresses no opinion on what rights, if any, plaintiffs or other importers may have in the interest earned by the funds in issue. The court's only concern at this time is the preservation of those rights which might exist and which would not survive in the absence of a court order.

■ 3. Defendants will suffer almost no harm from the conditional payment of the oil import license fees. The court agrees with the government's contention that the Court of Appeals stayed its mandate for the purpose of allowing the administration's energy policy to function during the period of time necessary for Supreme Court review. As the Court of Appeals noted in *Algonquin*, the oil import license fees are part of "an honest attempt by the President to find a solution to a difficult crisis. . . ." *Algonquin SNG v. FEA*, 518 F.2d 1051, 1062 (D.C.Cir., 1975). As the FEA in its September 26 notice and the Department of Justice in its memoranda and in open court have recognized, however, payment of the fees in issue into a special account subject to full refund in no way undermines the effectiveness of the administration's energy program. The oil importers will continue to bear the expense of the fees during the review period and will still be able to justify price increases, there-

by passing the costs through to the consumer.

■ The government has also admitted that the investment of the fees in interest bearing treasury notes will not hamper the operation of the energy program. The defendants do argue, however, that forcing the government to allocate interest to these funds, which it could otherwise use interest-free, forces the American people to bear an additional and unnecessary cost for the operation of the oil conservation plan. The government fails to realize, however, that the interest allocated to the fees in the special account will never leave the treasury unless the Court of Appeals decision in *Algonquin* is affirmed and the government is found never to have had any right to collect the fees in the first place.[2] Such a result is entirely equitable; the administration has chosen to bear the risk of continuing a program a federal appellate court has declared illegal. Should the government prevail before the Supreme Court and have the free program declared valid, the interest earned by the import license fees will become the property of the United States and the American people will have borne no additional cost for the energy program.

■■ 4. The plaintiffs have shown that they are likely to succeed on the merits of their prayer for a permanent injunction prohibiting future oil import license fee payments and directing refund of fees already collected. The major substantive issue in the instant cases, the validity of the fee program, will be decided by the Supreme Court, either directly or by denial of certiorari. The court cannot require a stronger showing of plaintiffs' likelihood of success on this issue than the Court of Appeals decision in *Algonquin*. Although the court stayed its mandate, the decision retains the effect of law and estops the government from arguing the legality of the

fee program in this court. *See Nixon v. Richey,* 513 F.2d 430, 438 n. 75 (D.C. Cir. 1975); 1B J. Moore, Federal Practice ¶ 0.416[3], at 2254 (1974).

■ 5. The public interest will be well served by a preliminary injunction directing the conditional payment of the oil import license fees. The public's interest in having an energy program functioning during the period the Supreme Court reviews *Algonquin* will be served because the program will be allowed to operate with full force. At the same time, the public interest in having the courts protect the property rights of individuals will be served. Indeed, the order issued in the instant case will preserve not only the rights of the plaintiffs and oil importers but the rights of consumers as well. Should the Supreme Court affirm the Court of Appeals, consumers may assert a right to recover the fees directly from the government or from each of the oil importers. In either event, the order in these cases will insure that all options remain open.

■ It thus appearing to the court, for the above reasons, that the issuance of a preliminary injunction is proper in these cases, the plaintiffs' motions will be granted. An appropriate order will accompany this Memorandum.

## ORDER FOR PRELIMINARY INJUNCTION

These matters come before the court on plaintiffs' motions for preliminary injunctions pursuant to the order of this court entered September 30, 1975 and setting a hearing on the applications for preliminary injunctive relief for October 9, 1975. All parties appeared before the court by their respective counsel.

Upon consideration of the pleadings and memoranda submitted by the parties, and of official documents and data of which the court may take judicial notice, and having heard and considered

---

2. As noted earlier in this memorandum, it is possible that the government will be entitled to keep the interest allocated to the license fee fund even if the Court of Appeals is affirmed.

the oral arguments of counsel, the court finds that plaintiffs are being required to pay certain import fees for licenses to import crude oil and petroleum products pursuant to Presidential Proclamation, that the United States Court of Appeals for the District of Columbia Circuit has found the President lacked authority under 19 U.S.C. 1862(b) (1970) to impose said import fees, that the defendants have filed a petition for certiorari to secure review of that decision by the United States Supreme Court, that a stay of the mandate of the United States Court of Appeals for the District of Columbia Circuit in that case has been extended by defendants' petition for a writ of certiorari pursuant to Rule 41(b) of the Federal Rules of Appellate Procedure, that as of the date of this order there has been no action by the United States Supreme Court upon the petition for a writ of certiorari, that defendants continue to assert the right to collect such import fees, that if such fees are collected by defendants the right of plaintiffs to recover such fees in the event their imposition and collection is held to be invalid by the United States Supreme Court is doubtful without any action by this court, that the sums involved are very large and would impose great and irreparable harm upon plaintiffs if not recovered in such event, that defendants will suffer almost no harm from conditional payment of the funds in question or the accumulation of interest thereon, that the entry of this order is in the public interest in that it protects certain interests claimed by the plaintiffs while also protecting the interests of the government in maintaining the orderly operation of the license fee program during the pendency of Supreme Court consideration and review, and that, in light of the small harm that defendants may suffer from the issuance of this order, and the Court of Appeals' decision concerning the President's lack of authority to impose the fees in question, plaintiffs have made an adequate showing of their likelihood of success on the merits.

Accordingly, the court being fully advised in the premises and for the reasons set forth in the court's Memorandum of Findings of Fact and Conclusions of Law filed with this order, it is, by the court this 16th day of October, 1975,

Ordered:

(1) That plaintiffs shall pay the oil import license fees on crude oil and petroleum products imposed pursuant to Presidential Proclamation No. 3279, as amended, pursuant to regulations promulgated by defendants under said Proclamation, and that said fees paid to defendants by plaintiffs and other similarly situated oil importers shall be paid into the United States Treasury by defendants upon the condition that these monies shall be held in a special account which shall be repayable in full to plaintiffs, other similarly situated oil importers who have made such payments, or such other persons, parties, or entities, if any, as may be subsequently adjudged to be entitled thereto, and such funds shall be held by the United States Treasury in such manner as to be available for such repayment upon order or adjudication that any such party is entitled to such repayment;

(2) That such funds paid into the United States Treasury on account of oil import fees shall be held and invested by the United States Treasury in United States government notes of approximately 90 days duration, or other similar interest-bearing government obligations, and that the interest on such funds shall be accrued in the special account and held in such manner as to be available for payment to plaintiffs, other oil importers for whom such funds are held, or any other party upon adjudication that any such parties are entitled to such payment;

(3) That the court retains jurisdiction of these actions for the enforcement, interpretation, modification or termination of this order, and for such other or further proceedings or order as the court may deem necessary or appro-

priate, in the light of any developments or changes in circumstances that may occur hereafter;

(4) That further proceedings herein, including the filing of answers, or other responses, to the complaints herein, discovery proceedings by any of the parties, and all pleadings or motions other than those specified in and permitted by this order, shall be held in abeyance until further order of this court;

(5) That, in light of the security afforded the defendants by the payment of import fees into a special account in the United States Treasury as provided herein, plaintiffs are not required to post bonds pursuant to Rule 65, Federal Rules of Civil Procedure, except as required in 10 C.F.R. 213.35 to secure payment of import fees incurred but not yet paid.