EDWARD S. SMITH, Circuit Judge.
 

 Appellant Getty Oil Company (Getty) appeals from an order of the United States Claims Court denying Getty’s summary judgment motion for interest on the amount of its refunded royalty payment. We affirm.
 

 Issues
 

 We face two issues: (1) whether the Government’s failure to pay Getty interest on the royalty payment which the Government eventually refunded constitutes a “taking” in violation of the fifth amendment of the United States Constitution; and (2) whether payment of such interest is barred by statute.
 

 Background
 

 Getty owns an undivided interest in an offshore oil and gas lease granted by the Government. In late 1978 the United States Geological Survey (USGS) ordered Getty to pay additional royalties, which Getty paid in February 1979, in the sum of $606,362.13, under protest. Getty continued to pay each month, under protest, royalties up to a total of $775,392.39. Getty unsuccessfully appealed the royalty payments within USGS, but obtained a reversal upon appeal to the Department of the Interior Board of Land Appeals (board), on October 31, 1980. After demanding repayment plus interest from USGS, Getty received a response in February 1981 that USGS was processing the refund request under section 10 of the Outer Continental Shelf Lands Act (OCSLA)
 
 [1]
 
 and that USGS regulations lacked provision for payment of interest on refunds. Finally, on March 19, 1982, Getty received a Government check for $775,392.39.
 

 Getty sued in the court below for interest totalling $364,404.36 on the refunded royalty payments. The Claims Court denied Getty’s motion for summary judgment and granted the Government’s,
 
 [2]
 
 on the theory that no contract or statute expressly provided for such interest, as required by 28 U.S.C. § 2516(a) (1982).
 
 [3]
 
 The court also rejected Getty’s taking argument.
 

 1.
 
 The Taking Claim
 

 Getty contends that the use value of Getty’s $775,392.39, measured as the imputed interest for the time Getty lost and the Government gained that use value, constitutes Getty’s private property which the Government took without just compensation, in violation of the fifth amendment. The Government deposited Getty’s money into the Treasury, credited for miscellaneous receipts, where it was available for ordinary governmental expenses for over 3 years. Getty concedes that the money did
 
 *888
 
 not earn interest in that account, but contends that, since the Government has operated on a deficit for many years, leaving no funds idle, the Government’s use of Getty’s money allowed it not to have to borrow and pay interest on an equivalent sum.
 

 While Getty’s argument would make sense to any banker or economist, or even to the typical taxpayer, we are bound by judicial precedent and the Constitution; authorities that do not go so far as Getty contends. In the Henkels
 
 [4]
 
 case, which arose under the Trading with the Enemy Act,
 
 [5]
 
 the Government seized a company in which Henkels, a United States citizen, owned stock. The Government sold the stock, depositing the proceeds in the account of the Alien Property Custodian, where the money was invested in interest-bearing United States securities. When Henkels established his right to the stock, the Supreme Court held that that included the right to the interest earned on the proceeds from the stock, carefully distinguishing this from the typical interest-on-a-government-obligation claim:
 
 [6]
 

 The Government cannot be sued without its consent; and, accordingly, it cannot be sued for interest unless it consents to be liable therefor. But the claim here is
 
 not
 
 for interest to be paid by the United States in the sense of the rule. It is for income, derived from an investment of Henkels’ money in obligations of the United States, which income
 
 has been actually received
 
 by the Treasury and is in its possession to be held, as the proceeds themselves are to be held,
 
 for the account of the Alien Property Custodian.
 
 [Emphasis supplied.]
 

 Getty also relies upon the
 
 Webb’s
 
 case.
 
 [7]
 
 That case likewise is distinguishable, because it involved money put in an inter-pleader account, which the county clerk was required to invest at the highest interest, and where, most importantly, the money was “held only for the ultimate benefit of Webb’s creditors, not for the benefit of the court and not for the benefit of the county. And it was held only for the purpose of making a fair distribution among those creditors.”
 
 [8]
 
 Hence the Court found that the creditors had a state-created property right to their respective portions of the fund. This contrasts with the instant case, in which the status of Getty’s royalty payments was disputed, until the board ruled in favor of Getty and no appeal was taken. Moreover, as noted above, Getty’s payments were never put in a designated account where they specifically earned interest.
 

 Getty urges that these distinctions are mere form over substance.
 
 [9]
 
 We do not agree and affirm the lower court’s rejection of the taking theory.
 
 [10]
 

 2.
 
 The Statutory Bar
 

 In rejecting Getty’s interest claim as barred by statute, the Claims Court re
 
 *889
 
 lied upon section 2516(a), quoted above. The trial court found no contract or act of Congress expressly providing for the requested interest. Getty attempts to distinguish the interest it seeks as arising from the primary, contractual recovery on the use value of Getty’s money, as opposed to supplemental, delayed damages.
 
 [11]
 
 These distinctions are without a difference, especially in light of the controlling principle that any waiver of sovereign immunity must be strictly construed.
 
 [12]
 

 In addition, the OCSLA provides:
 
 [13]
 

 (a) * * * [W]hen it appears to the satisfaction of the Secretary that any person has made a payment to the United States in connection with any lease under this subchapter in excess of the amount he was lawfully required to pay,
 
 such excess shall be repaid without interest
 
 to such person or his legal representative * * *. [Emphasis supplied.]
 

 Getty attempts to avoid what appears to be the clear intent of a statute directed precisely to this situation by contending that the legislative history shows that the provision was meant to nullify the harsh “voluntary payment” rule at common law, whereby the Government kept accidental overpayments. The face of the statute gives no indication of such a meaning, however. In any event, even if there were a crack of doubt about the applicability of either section 2516(a) or section 1339(a), it is amply filled by the rule that waivers of sovereign immunity must be strictly construed.
 

 The Claims Court’s order is affirmed. We decline to impose sanctions for a frivolous appeal, as the Government has urged.
 

 AFFIRMED.
 

 [1]
 

 . 43 U.S.C. § 1339 (1982).
 

 [2]
 

 .
 
 Getty Oil Co. v. United States,
 
 No. 550-82C, slip op. (unpublished order) (Aug. 23, 1984).
 

 [3]
 

 . Section 2516(a) of title 28 U.S.C. (1982) provides:
 

 "(a) Interest on a claim against the United States shall be allowed in a judgment of the United States Claims Court only under a contract or Act of Congress expressly providing for payment thereof.”
 

 [4]
 

 .
 
 Henkels v. Sutherland,
 
 271 U.S. 298, 46 S.Ct. 524, 70 L.Ed. 953 (1926).
 

 [5]
 

 .
 
 Henkels
 
 was not decided on a fifth amendment "taking” theory, but rather on an interpretation of the then-applicable act and on equitable principles.
 

 [6]
 

 .
 
 Henkels,
 
 271 U.S. at 301, 46 S.Ct. at 526.
 

 [7]
 

 .
 
 Webb’s Fabulous Pharmacies, Inc. v. Beckwith,
 
 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980).
 

 [8]
 

 .
 
 Id.
 
 at 161, 101 S.Ct. at 451.
 

 [9]
 

 . Getty cites a recent Supreme Court tax case,
 
 Dickman v. Commissioner,
 
 465 U.S. 330, 104 S.Ct. 1086, 79 L.Ed.2d 343 (1984), holding that intrafamily interest-free loan of funds constitutes a transfer by gift under the federal gift tax statutes. While we appreciate the conceptual similarities between that case and Getty’s,
 
 Dick-man
 
 is not persuasive in the taking context.
 

 [10]
 

 . Even if Getty were to establish property ownership in the funds at issue, it would then have to show that the Government took the property for a public purpose, to establish a fifth amendment claim.
 
 See, e.g., Shanghai Power Co. v. United States, 4
 
 Cl.Ct. 237, 239-40 (1983),
 
 aff’d,
 
 No. 84-1424, unpub. slip op. (Fed.Cir. Feb. 13, 1985). There was no such public purpose, where Getty paid the royalty payments under protest concerning interpretation of the case. This contrasts with another case relied upon by Getty,
 
 Kimball Laundry Co. v. United States,
 
 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949), in which the Government acquired a laundry for Army use during World War II—clearly a public purpose.
 

 [11]
 

 . Getty cites the portion of
 
 Henkels
 
 quoted
 
 supra
 
 to make this distinction. We have already explained why
 
 Henkels
 
 is not controlling here.
 

 [12]
 

 . Section 2516(a) codifies this principle, especially by requiring that any interest be "expressly" provided for in a contract or statute.
 
 See also Fidelity Constr. Co. v. United States,
 
 700 F.2d 1379, 1383 (Fed.Cir.),
 
 cert. denied,
 
 — U.S. -, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983).
 
 Compare J.F. Shea Co. v. United States,
 
 754 F.2d 338 (Fed.Cir.1985), in which a contractual provision provided for interest and the dispute was
 
 how
 
 to calculate the interest.
 

 [13]
 

 . 43 U.S.C. § 1339(a). Getty is incorrect that the trial court did not cite this provision in its opinion. It did, and in our view relied upon it equally with § 2516(a) in rejecting Getty’s claim as not allowable under statute.
 
 Getty,
 
 No. 550-82C, slip op. at 2.